## ROSEMARY HOWELL, PETITIONER[1] v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 19104–80.    Filed October 22, 1981.

*Marvin E. Hagen* and *Gene F. Reardon,* for the petitioner.
*Joseph T. Chalhoub,* for the respondent.

### OPINION

DAWSON, *Judge*: This case was assigned to Special Trial Judge Francis J. Cantrel for the purpose of conducting the hearing and ruling on petitioner's motion to dismiss for lack of jurisdiction as to the imposition of additional excise taxes under section 4941(b)(1).[2] After a review of the record, we agree with and adopt his opinion which is set forth below.[3]

---

[1]This case was briefed and argued together with related cases, the Barth Foundation, docket Nos. 19101–80, 19102–80, and 19103–80. However, the cases are not consolidated, and disposition of pending motions in the latter cases will be made in the near future.

[2]All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[3]Since this is a preliminary jurisdictional motion, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in the present circumstances. This conclusion is based on the authority of the "otherwise provided" language of that Rule.

## OPINION OF THE SPECIAL TRIAL JUDGE

CANTREL, *Special Trial Judge*: This case is before the Court on petitioner's motion to dismiss filed on December 8, 1980. The issue presented is whether the provisions of the Second Tier Tax Correction Act of 1980 (the act), Pub. L. 96–596, 94 Stat. 3469, are applicable to a docketed but untried case involving second tier excise taxes pending in the Tax Court on or prior to the date of enactment, December 24, 1980, or whether such case is controlled by our opinion in *Adams v. Commissioner*, 72 T.C. 81 (1979), on appeal (2d Cir., June 23, 1981).

A brief recitation of the procedural history of this case is necessary. On May 14, 1980, respondent mailed petitioner a statutory notice of deficiency determining therein the following excise tax deficiencies:

| Year ending Dec. 31— | First tier tax sec. 4941(a)(1) | Second tier tax sec. 4941(b)(1) |
| --- | --- | --- |
| 1973 | $252.33 | $10,093.24 |
| 1974 | 926.62 | 37,064.62 |
| 1975 | 495.73 | 19,829.00 |

Petitioner timely filed her petition contesting the imposition of these excise taxes on October 14, 1980,[4] at which time she resided at 449 Paseo de La Reforma, Apartment 2B, Mexico City, Mexico. On December 8, 1980, she filed her motion to dismiss additional excise taxes under section 4941(b)(1), and a hearing was held thereon at Washington, D.C., on January 21, 1981. Petitioner filed a statement in lieu of appearance at the hearing, while respondent appeared and presented his arguments. At the conclusion of the hearing, the Court took petitioner's motion under advisement. On April 3, 1981, petitioner filed a supplemental brief in support of her motion.

Section 4941 imposes two levels of excise taxes. Initially, section 4941(a)(1) imposes on the self-dealer a tax equal to 5 percent of the amount involved for each act of self-dealing between a disqualified person and a private foundation. This tax is levied for each year or part thereof, in the taxable period

---

[4]The notice of deficiency was addressed to petitioner in Mexico, allowing 150 days in which to file a petition in this Court. Sec. 6213(a). The envelope in which the petition was received by the Court was properly addressed, postage prepaid, and it bears a clearly legible U.S. postmeter stamp date of Oct. 9, 1980. See sec. 7502.

which begins on the date the act of self-dealing occurs and ends on the earliest of the date of the mailing of the notice of deficiency, the date the tax is assessed, or the date the self-dealing act is corrected. Section 4941(b)(1) imposes an additional tax of 200 percent of the amount involved if the act of self-dealing is not corrected within the taxable period. Correction requires undoing the transaction to the extent possible. Sec. 4941(e)(3).

Under prior law, the second tier tax was imposed at the end of the correction period, which was 90 days after the mailing of the notice of deficiency, extended by any period in which a deficiency could not be assessed.[5] In *Adams v. Commissioner, supra*,[6] upon which petitioner heavily relies, we held that the taxpayer prevailed with respect to the second tier taxes because there was no deficiency, as that term is defined in section 6211, on the date the notice of deficiency was mailed. We said:

On the date of the mailing of the notice of deficiency which determines the second-level tax, our decision with respect to that tax obviously has not yet become final. Since our decision is not final, under section 4941(e)(4) the correction period has not expired. Pursuant to section 4941(b)(1), the expiration of the correction period is a prerequisite to the imposition of the second-level tax. If the tax is not imposed until the correction period expires, it is clearly not imposed on the date of the mailing of the statutory notice and, therefore, there is no "deficiency" as that term is defined in section 6211(a). Because petitioner has sought this Court's redetermination of a deficiency determined by respondent, and because no deficiency exists, we are bound to enter a decision for petitioner as to the second-level tax. [72 T.C. at 85–86.]

The dismissal motion before the Court in this case involves the question of whether we must follow our *Adams* opinion, or whether the amendments made to the Internal Revenue Code by chapter 42, Second Tier Tax Correction Act of 1980, Pub. L.

---

[5]Under the amendments enacted as Pub. L. 96–596, 94 Stat. 3469, petitioner, as before, has the opportunity to correct during the correction period as defined in sec. 4962(e) and, furthermore, she is now given the opportunity to have another hearing conducted for the purpose of determining whether the act for which the second tier excise tax was imposed was corrected. Sec. 4961(b).

[6]See also *Larchmont Foundation, Inc. v. Commissioner*, 72 T.C. 131 (1979), vacated and remanded (7th Cir., June 11, 1981); *H. Fort Flowers Foundation, Inc. v. Commissioner*, 72 T.C. 399 (1979), appeal dismissed (6th Cir., Apr. 7, 1980).

96–596, 94 Stat. 3469, signed by the President on December 24, 1980, apply to this case.

Respondent, in oral argument, contended that this case is controlled by the amendments to section 4941 made by Pub. L. 96–596. Petitioner admits that the act "corrected the jurisdiction defect regarding the imposition of second level excise tax and other technical defects in the prior law" .but she argues that the amendments are not applicable to this case where the notice of deficiency was "mailed to a taxpayer or to taxes assessed" before the date of enactment of the act. The notice of deficiency, here, was sent on May 14, 1980, and Pub. L. 96–596 was signed into law on December 24, 1980. Moreover, in her brief, petitioner argues that respondent's interpretation would give the act retroactive effect back to an indefinite date with respect to the second tier taxes, which violates due process by failing to clearly express Congress' retroactive intent.

The act provides for effective dates as follows:

SEC. 2(d) EFFECTIVE DATES.—

(1) FIRST TIER TAXES.—The amendments made by this section with respect to any first tier tax shall take effect as if included in the Internal Revenue Code of 1954 when such tax was first imposed.

(2) SECOND TIER TAXES.—The amendments made by this section with respect to any second tier tax shall apply only with respect to taxes assessed after the date of the enactment of this Act. Nothing in the preceding sentence shall be construed to permit the assessment of a tax in a case to which, on the date of the enactment of this Act, the doctrine of res judicata applies.

(3) FIRST AND SECOND TIER TAX.—For purposes of this subsection, the terms "first tier tax" and "second tier tax" have the respective meanings given to such terms by section 4962 of the Internal Revenue Code of 1954. [sec. 2(d), Pub. L. 96–596, 94 Stat. 3474.]

Since, in this case, the notice of deficiency was mailed prior to the enactment of the act's amendments, the parties are not in agreement that the amendments automatically apply. The determination must be based on the language: "The amendments made by this section with respect to any second tier tax shall apply only with respect to taxes assessed after the date of the enactment of this Act." (Dec. 24, 1980.)

We first look to the literal meaning of "assessed." *Crooks v. Harrelson,* 282 U.S. 55, 59 (1930); *Mountain Water Co. v. Commissioner,* 35 T.C. 418, 424 (1960), appeal dismissed (9th Cir., Mar. 16, 1961); *O'Donnell v. Commissioner,* 35 B.T.A. 251,

255 (1937), affd. sub nom. *O'Donnell v. Helvering*, 94 F.2d 852 (2d Cir. 1938). Assessment of a tax involves a ministerial function whereupon the Secretary records the liability of the taxpayer. Sec. 6203; sec. 301.6203-1, Proced. & Admin. Regs.; *United States v. Dixieline Financial, Inc.*, 594 F.2d 1311, 1312 (9th Cir. 1979); *In re O'Leary*, an unreported case (W.D. Wis. 1972, 29 AFTR 2d 72-822, 72-1 USTC par. 9287); *United States v. City of New York*, 132 F. Supp. 779, 781 (E.D. N.Y. 1955), affd. on other grounds 233 F.2d 307 (2d Cir. 1956). However, an assessment cannot be made, except in exceptional circumstances,[7] none of which are applicable to this case, until a notice of deficiency has been issued. Sec. 6213; sec. 301.6213.1(a)(2), Proced. & Admin. Regs.; *Bregin v. Commissioner*, 74 T.C. 1097, 1102 (1980).

Furthermore, no assessment can be made where a petition has been timely and validly filed in this Court until the decision of this Court becomes final. Sec. 6213(a); sec. 1.6213-1(c), Income Tax Regs.; *Adams v. Commissioner, supra* at 85; *United States v. Walker*, 217 F. Supp. 888, 890 (W.D. S.C. 1963). Thus, an assessment is not made until our decision becomes final. Consequently, the amendments made by Pub. L. 96-596, *supra*, are applicable in this case to the second tier taxes imposed by section 4941 because such taxes have not been "assessed" and the doctrine of res judicata clearly does not apply where the case has not yet been tried and decided on its merits.[8]

Petitioner has confused two distinct events by equating the mailing of the notice of deficiency with the assessment of the tax. The effective date provisions of Pub. L. 96-596, *supra*, are

---

[7]Assessment can be made without the mailing of a notice of deficiency under sec. 6213(b) for mathematical or clerical errors on the taxpayer's return or when arising out of tentative carryback or refund adjustments under sec. 6411 or 1341(b)(1) or for amounts already paid with respect to a tax, or under sec. 6861(a) relating to jeopardy assessments of income, estate, and gift taxes, or under sec. 6871(a) relating to immediate assessment of claims for income, estate, and gift taxes in bankruptcy and receivership cases, or under sec. 7485 where a petitioner, upon appealing a decision of this Court, fails to file bond, or if the taxpayer has waived the restrictions on assessment under sec. 6213(d).

[8]It is unnecessary for us to comment on or consider in this case whether the doctrine of res judicata, as used in sec. 4941(d)(2), would apply to cases decided by this Court on their merits (findings of fact and opinion) prior to Dec. 24, 1980. See, e.g., *Adams v. Commissioner*, 72 T.C. 81 (1979), on appeal (2d Cir., June 23, 1981); *Larchmont Foundation, Inc. v. Commissioner, supra*.

not controlled by the date the notice of deficiency is mailed. Instead, the act is clearly tied to the date of assessment, which occurs in this case after the mailing of the notice of deficiency. Our interpretation of the plain and ordinary meaning of the word "assessed" is augmented and supported by the following explanation contained in the House and Senate reports:

> However, the second-tier tax is not to be assessed if the taxpayer files a petition with the Tax Court to redetermine that tax and the taxpayer corrects the prohibited act by the end of the correction period. * * *
>
>         \*      \*      \*      \*      \*      \*      \*
>
>     Thus, where the taxpayer petitions the Tax Court to redetermine a second-tier tax, the tax may not be assessed unless the Court decides (including a decision in any supplemental proceeding) that the taxpayer has engaged in an act giving rise to a first-tier tax and that the act was not timely corrected. [H. Rept. 96–912, at 3 (1980), 1980–2 C.B. 657–658; S. Rept. 96–1034, at 5 (1980).]

We think it is clear from these statements that Congress intended the interpretation that respondent has presented. A second tier tax may not be assessed until after this Court's decision has become final, and thus the amendments made by Pub. L. 96–596, *supra*, are applicable to this case.

Petitioner also argues that such interpretation would give the act a retroactive effect and because its retroactivity is not clearly expressed by the setting of a fixed date, the amendments are being applied in an invalid manner. Petitioner relies on *United States v. Darusmont*, 449 U.S. 292 (1981). Her reliance thereon is unfounded. The language of the Supreme Court simply cannot be construed to require retroactivity back to a fixed date. There, the Supreme Court upheld the retroactive application of the minimum tax provisions of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, which happened to be retroactively effective "to items of tax preference for taxable years beginning after December 31, 1975." Sec. 301(g)(1), Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1553.

Retroactive tax statutes have long been upheld. *Brushaber v. Union Pacific R. Co.*, 240 U.S. 1 (1916); *United States v. Darusmont, supra*. The retroactivity of a revenue statute is suspect where it involves a new tax, but not where it involves a mere change in rate or a technical amendment. Here we have what is akin to a technical amendment. This is not a case

where the taxpayer had "no reason to suppose that any transactions of the sort will be taxed at all." *Cohan v. Commissioner*, 39 F.2d 540, 545 (2d Cir. 1930); *United States v. Darusmont, supra* at 298. These amendments were enacted to correct procedural defects existing in the Internal Revenue Code from provisions added by the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487. These defects were discussed in our opinion in *Adams v. Commissioner, supra* at 89–92. The House and Senate reports make it clear that the amendments "should continue the original intent of the Congress" that prompted the enactment of the private foundation excise taxes in 1969. See S. Rept. 96–1034, *supra* at 5; H. Rept. 96–912, *supra*, at 2, 1980–2 C.B. at 657.

Moreover, a corrective revenue measure, like the one involved in this case, can be made retroactive without going back to a fixed date. See *Graham & Foster v. Goodcell*, 282 U.S. 409 (1931).[9] That case involved the retroactivity of section 611 of the Revenue Act of 1928, ch. 852, 45 Stat. 791, 26 U.S.C. sec. 2611. The need for corrective legislation arose when the Supreme Court held, contrary to a Treasury Department ruling,[10] that the 5-year statute of limitations imposed by section 250(d) of the Revenue Acts of 1918 and 1921[11] did apply to collection proceedings by distraint.[12] As a result, many collections previously made had technically been barred by the statute of limitations. To avoid having the Treasury refund such money as an overpayment under section 607,[13] Congress enacted section 611, which provided that any tax which was "within the period of limitations properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed" staying collection, then "the payment of such part (made before or within one year after the enactment of this Act)[14] shall not be considered as an overpayment under the provisions of section 607." (45 Stat. 875.) Although the taxpayer

---

[9]See also *Milliken v. United States*, 283 U.S. 15 (1931); *Igleheart v. Commissioner*, 28 B.T.A. 888 (1933).

[10]I.T. 1446, I–2 C.B. 218 (1922).

[11]Revenue Act of 1918, ch. 18, 40 Stat. 1057; Revenue Act of 1921, ch. 136, 42 Stat. 227.

[12]*Bowers v. New York & Albany Lighterage Co.*, 273 U.S. 346 (1927).

[13]Revenue Act of 1928, ch. 852, 45 Stat. 791, 26 U.S.C. sec. 2611.

[14]Enacted May 29, 1928.

contended that section 611 was to apply prospectively, only, the Supreme Court held that section 611 expressly applies to taxes which were assessed prior to June 2, 1924, and its application was determined by the circumstances in which the tax had been paid, not the time for filing a claim for refund. *Graham & Foster v. Goodcell, supra* at 418–419.

The application of the amendments, here involved, similarly depends upon when the second tier tax is assessed, and not when the notice of deficiency for the excise taxes is mailed. Thus, these amendments can, and validly do, apply to acts of self-dealing which occurred before the enactment of the amendments, and which, when performed, were subject to an existing tax. As the Supreme Court said in *Graham*, "a distinction is made between a bare attempt of the legislature retroactively to create liabilities for transactions which, fully consummated in the past, are deemed to leave no ground for legislative intervention, and the case of a curative statute aptly designed to remedy mistakes and defects in the administration of government where the remedy can be applied without injustice." 282 U.S. 429.

Accordingly, we hold that the amendments to section 4941, enacted by Pub. L. 96–596, which impose excise taxes for acts of self-dealing, are applicable to this case, where the acts of self-dealing and the mailing of the notice of deficiency both occurred before December 24, 1980, but the second tier excise taxes imposed by the notice of deficiency were not "assessed" before that date. We also hold that the retroactive effect of these amendments does not violate due process by failing to relate back to a fixed date. Therefore, the petitioner's motion to dismiss for lack of jurisdiction insofar as the petition alleges error in the imposition of second tier excise taxes under section 4941(b)(1) will be denied.

*An appropriate order will be issued.*

Reviewed by the Court.

TANNENWALD, *Chief Judge*, concurring: I agree with Judge Fay that we have jurisdiction over this case regardless of the constitutionality or applicability of the disputed portions of

the Second Tier Tax Correction Act of 1980, Pub. L. 96–596, 94 Stat. 3469, and because we are now called upon to rule only on a motion to dismiss for lack of jurisdiction, we need say no more at this time. However, because a majority of this Court has seen fit to address the substantive issues, I am constrained to append my further views.

Judge Fay plainly is correct in his observation that we can breathe life into the second tier excise taxes only if we ascribe to "assessed" something other than its term-of-art meaning when used in the Second Tier Tax Correction Act's effective date provision. See sec. 2(d), Pub. L. 96–596, *supra*. Unlike Judge Fay, however, I think that any constitutional difficulty in interpreting "assessed" to mean "may be assessed" can be averted, since the onerous second tier excise taxes may not be imposed upon a taxpayer unless he committed a prohibited act (see, e.g., sec. 4945(d)), *and* refuses to correct his conduct during the statutory period for correction, which expires well after the taxpayer has been notified of (and, if he wishes, after a court has confirmed) his potential liability for the second tier tax. See secs. 4961 and 4962. At least where the taxpayer is unable to demonstrate his lack of ability to correct within the statutory period, I can see no constitutional infirmity in such a reading of "assessed."

PARKER and EKMAN, *JJ.*, agree with this concurring opinion.

SCOTT, *J.*, concurring: I agree with the conclusion of the majority, but in my view, how the provision of section 4941(e)(1)(A), which defines "taxable period" as ending on "the date of mailing a notice of deficiency with respect to the tax imposed by subsection (a)(1)," affects the validity of a notice mailed before the enactment of that provision, needs further discussion. In *Adams v. Commissioner*, 72 T.C. 81 (1979), on appeal (2d Cir., June 23, 1981), we held that no second tier tax was imposed at the time of the mailing of the notice of deficiency. Under the provisions of section 4941(e)(1)(A), such a second tier tax is imposed at the time the notice of deficiency is mailed. The conclusion reached by the majority assumes that a notice mailed prior to the enactment of section 4941(e)(1) is a

valid notice as to the second tier tax. In my view, this assumption is correct.

It was the intent of section 4941(e) to confer jurisdiction on this Court to redetermine the second tier tax when the second tier tax is asserted in the notice of deficiency. The provision as to retroactive application of the amendment discussed by the majority, in my view, was intended to cure any defect that might have existed in a notice mailed prior to the amendment. Once it is concluded that the deficiency notice issued in this case confers jurisdiction on this Court to redetermine the second tier tax, I agree with the majority that we should consider whether a motion for summary judgment should be granted. For the reasons set forth by the majority, as well as the fact pointed out by Chief Judge Tannenwald in his concurring opinion, that a taxpayer has a right to correct the prohibited act even after this Court has entered a decision in his case (secs. 4961(a) and (b) and 4962(e)), I agree that summary judgment should not be granted to petitioner.

FAY, *J.*, concurring: I concur only in the majority's conclusion that petitioner's motion to dismiss for lack of jurisdiction should be denied. I disagree strongly with the majority opinion's reasons for its result.

It is clear that we have jurisdiction over the asserted second tier tax, just as we had jurisdiction in *Adams v. Commissioner*, 72 T.C. 81 (1979), on appeal (2d Cir., June 23, 1981). In *Adams*, we did not dismiss for lack of jurisdiction. Rather, we determined there was no deficiency and decided the case for the taxpayer. Therefore, I cannot fault the majority's refusal to dismiss for lack of jurisdiction. However, the majority opinion goes well beyond deciding the simple jurisdictional issue. In essence, the majority opinion treats petitioner's motion herein as one for partial summary judgment and concludes that the 1980 amendments to the second tier tax are applicable to petitioner. It is with that conclusion that I cannot agree.

Stated simply, the issue decided by the majority in this case is whether the Second Tier Tax Correction Act of 1980 (the 1980 Act), Pub. L. 96–596, 94 Stat. 3469, applies to cases

pending in this Court on or prior to the date of enactment, December 24, 1980.[1] The issue is troublesome because the effective dates for the 1980 Act are set forth in the statute as follows:

SEC. 2(d) EFFECTIVE DATES.—

(1) FIRST TIER TAXES.—The amendments made by this section with respect to any first tier tax shall take effect as if included in the Internal Revenue Code of 1954 when such tax was first imposed.

(2) SECOND TIER TAXES.—The amendments made by this section with respect to any second tier tax *shall apply only with respect to taxes assessed after the date of the enactment* of this Act [Dec. 24, 1980]. Nothing in the preceding sentence shall be construed to permit the assessment of a tax in a case to which, on the date of the enactment of this Act, the doctrine of res judicata applies.

[94 Stat. 3474; emphasis added.]

The legislative history provides only that:

The bill applies to second-tier taxes assessed after the date of enactment of the bill (except in cases where a court decision with respect to that tax is final on that date). [H. Rept. 96–912 (1980), 1980–2 C.B. 658.][2]

"Assessed" is an odd choice in this context. Basically, "assessed" is a term of art meaning "billed" whereby a taxpayer's liability is recorded by the Secretary. Sec. 6203. Subject to a few exceptions which do not apply here, assessment is prohibited unless the taxpayer first receives a notice of deficiency under section 6212, and, if the taxpayer timely files a petition in this Court, until our decision has become final. Sec. 6213(a). See sec. 7481(b) ("final"). Thus, assessment is something that happens, if at all, only at the end of a given tax case's progress through this Court.

The majority opinion purports to accept a literal meaning of "assessed" concluding, that since the second tier taxes at issue herein have not been "assessed," the 1980 Act applies in this case. What the majority opinion fails to perceive is that if the

---

[1] If the 1980 Act is not retroactive, petitioner is entitled to partial summary judgment under *Adams v. Commissioner*, 72 T.C. 81 (1979), on appeal (2d Cir., June 23, 1981).

[2] But see Joint Committee on Taxation, Summary of Miscellaneous Tax Bills Passed by the Congress in the Post-Election Session 9 (Dec. 23, 1980) (implying that the 1980 Act was prospective only):

"Under the bill, the second-tier excise tax *will be imposed* before any litigation begins (in order to insure that the Court will have jurisdiction) but is to be forgiven if the prohibited act is corrected within a correction period. [Emphasis added.]"

words "taxes assessed after the date of enactment [December 24, 1980]" are taken literally, then we cannot possibly know whether the 1980 Act applies since we have absolutely no way of knowing if these taxes ever will be assessed at all.[3] Obviously, taxes never assessed are not assessed "after" any date. Technically, the majority reads assessed as "might be assessed." Thus, in order to reach the majority result herein, the effective date language cannot be read literally.

Petitioner contends that "assessed" really means "asserted." Thus, the 1980 Act would apply only to second tier taxes asserted after December 24, 1980, rather than being completely retroactive. Petitioner's argument is supported by the fact that Congress clearly made the first tier tax amendments completely retroactive and obviously meant something else when they used different language in prescribing an effective date for the second tier amendments. Furthermore, section 2(d)(2) of the 1980 Act provides: "Nothing in the preceding sentence shall be construed to permit the assessment of a tax in a case to which, on the date of the enactment of this Act, the doctrine of res judicata applies." Strictly speaking, this sentence is without legal effect. Section 6212(c) already bars any further action by the Commissioner once a decision is final. See, e.g., *Midland Mortgage Co. v. Commissioner*, 73 T.C. 902 (1980).[4] Section 6212(c) specifically applies to acts taxable under chapter 42. Sec. 101(f)(2) (amending sec. 6212(C)), Tax Reform Act of 1969, 1969–3 C.B. 30. Perhaps Congress was trying to exempt pending cases or only cases in which a

---

[3]In fact, it is highly unlikely that second tier taxes ever will be assessed. See secs. 4961(a) and 4962(e)(1).

[4]The majority opinion, *supra* at note 8, attempts to sidestep this problem by specifically declining to address the question whether the 1980 Act has retroactively overruled our decisions in *Adams v. Commissioner*, note 1 *supra*, and *Larchmont Foundation, Inc. v. Commissioner*, 72 T.C. 131 (1979), remanded by unpublished order (7th Cir., June 11, 1981). However, since both of those cases have been appealed, it is obvious to me that in neither case is there yet a final decision to which res judicata would apply. Thus, I see no way for us to avoid the conclusion that *Adams* and *Larchmont Foundation* have been affected as well. On the Government's motion, the Court of Appeals for the Seventh Circuit recently remanded *Larchmont Foundation* to this Court for us to determine whether the 1980 Act applies to decided cases still pending on appeal. A similar motion will probably be made before the Second Circuit Court of Appeals in *Adams*. These aspects of the problem in this case will not simply go away; accordingly, I cannot take seriously the suggestion that these issues need not be considered at this time. See note 5 *infra*.

decision of this Court had been entered.[5] Nevertheless, what Congress intended is far from clear, given the language employed. While petitioner's interpretation is the most sensible one in my view, I recognize that rewriting "assessed" to be "asserted" is probably not within our province as interpreters, rather than drafters, of the law.

Assuming that the majority opinion is correct in reading "assessed" to mean "may be assessed" so as to make the 1980 Act completely retroactive, I cannot agree that no grave constitutional problems exist. I fully realize that the invalidation of a tax statute on constitutional grounds is often regarded as a vestigial historical anomaly that is but a remote possibility today. See, e.g., *Sidney v. Commissioner*, 273 F.2d 928, 932 (2d Cir. 1960). See also *Laing v. United States*, 423 U.S. 161, 185 (1976) (Justice Brennan, concurring). Nonetheless, I think the majority opinion in this case does not adequately deal with what are fundamental constitutional infirmities in the statute.

Petitioner argues that, to be constitutionally valid, the retroactivity of a taxing statute must be plainly expressed, and cites *United States v. Darusmont*, 449 U.S. 292 (1981). *Darusmont* may suggest but does not clearly stand for this proposition. However, *Commissioner v. Acker*, 361 U.S. 87, 91–92 (1959), discussed below, strongly supports petitioner's argument. In any case, I do agree with petitioner that the statute is unclear.

The majority opinion relies mainly upon a veritable host of cases which have held that *income tax* statutes may be retroactive. See *United States v. Darusmont, supra,* and cases cited; *Buttke v. Commissioner*, 72 T.C. 677 and cases cited (1979), affd. 625 F.2d 202 (8th Cir. 1980); Hochman, "The Supreme Court and the Constitutionality of Retroactive Legislation," 73 Harv. L. Rev. 692, 706–711 (1960). In *Darusmont*, the Supreme Court relied heavily on the fact that an *income tax* was in issue:

---

[5] Perhaps Congress, by negative implication, was trying to suggest that all pending cases *are* affected by the 1980 Act. In other words, Congress may have meant that only cases in which final decisions have been entered are not affected. See H. Rept. 96–912 (1980), 1980–2 C.B. 658. If so, the majority's result would be correct. And if so, the taxpayers in *Adams v. Commissioner*, note 1 *supra,* and in *Larchmont Foundation, Inc. v. Commissioner*, note 4 *supra* will now lose the cases we decided in their favor 2 years ago.

> The Court consistently has held that the application of an *income tax statute* to the entire calendar year in which enactment took place does not per se violate the Due Process Clause of the Fifth Amendment. [449 U.S. at 297; emphasis added.]

> We do not regard [the cases invalidating the retroactivity of the gift tax] as controlling authority with respect to any retroactive feature of a *federal income tax*. [449 U.S. at 299; emphasis added.]

Moreover, the Court specifically indicated its rationale in such cases:

> "Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process, and to challenge the present tax it is not enough to point out that the taxable event, the receipt of income, antedated the statute." [449 U.S. at 298, quoting *Welch v. Henry*, 305 U.S. 134, 146–147 (1938).]

See also *Cohan v. Commissioner*, 39 F.2d 540, 545 (2d Cir. 1930).

The foregoing rationale plainly does not apply to the self-dealing and other second tier taxes of sections 4942–4947. Such taxes are not *income taxes* (they are *excise taxes*), and they are not revenue-producing taxes. The statute itself and the legislative histories of both the Tax Reform Act of 1969 and the 1980 Act make it clear that these second tier taxes were intended never to be collected. See *Adams v. Commissioner*, 72 T.C. at 87. In fact, these penalty taxes are not even remotely related to revenue collection as are, for example, the 50-percent fraud penalty of section 6653(b) (which compensates the Government for its extra effort to investigate and to collect taxes owed, *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938)) and the 100-percent penalty for failure to withhold under section 6672 (which is primarily a collection device, *Bolding v. United States*, 215 Ct. Cl. 148, 565 F.2d 663, 669 n. 3 (1977)).

In the case of excise taxes, the Supreme Court has uniformly held that a wholly new type of *excise* tax may not be imposed retroactively. *Nichols v. Coolidge*, 274 U.S. 531 (1927) (retroactive application of the estate tax held unconstitutional); *Untermyer v. Anderson*, 276 U.S. 440 (1928) (retroactive application of the gift tax held unconstitutional). See also *Sidney v. Commissioner, supra*. Even in *Untermyer*, where the gift tax bill had been passed by both Houses of Congress but

the conference report had not yet been adopted, the Court held:

> The mere fact that a gift was made while the bill containing the questioned provisions was in the last stage of progress through Congress we think is not enough to differentiate this cause from [*Blodgett v. Holden*, 275 U.S. 142 (1927), modified 276 U.S. 594 (1928)] and to relieve the legislation of the arbitrary character there ascribed to it. * * * The taxpayer * * * cannot foresee and ought not to be required to guess the outcome of pending measures. The future of every bill while before Congress is necessarily uncertain. The will of the lawmakers is not definitely expressed until final action thereon has been taken. [276 U.S. at 445–446.] [6]

Thus, in *Untermyer*, the retroactive application of the gift tax was held to be arbitrary and invalid under the due process clause of the Fifth Amendment.

Thus, the real issue in this case is the following: Does the 1980 Act actually seek to impose the second tier excise taxes retroactively, or does it merely cure infirmities in the administration of the statute so that a tax already enacted can be collected? This distinction is subtle and is not easy to apply, but I believe it is critical.

In a number of cases, the Supreme Court has upheld the retroactive enactment of "curative" statutes. See *United States v. Heinszen & Co.*, 206 U.S. 370 (1907); *Graham & Foster v. Goodcell*, 282 U.S. 409, 429 (1931); Hochman, *supra* at 703–706. In both of the above cited cases, taxes which had been validly imposed and were concededly owing turned out to have been collected without authority,[7] and Congress subsequently validated their earlier collection. In each case, Congress retroactively abolished unexpected technical defenses to taxes which had already been paid. In *Graham & Foster v. Goodcell, supra*, the Court carefully distinguished its cases holding the retroactive *imposition* of certain taxes unconstitutional:

> This is not a case of an attempt retroactively to create a liability in relation to a transaction as to which no liability had previously attached. There is no

---

[6]But see *United States v. Darusmont*, 449 U.S. 292, 299 (1981), where the Court noted, in dicta:

"Assuming, for purposes of argument, that personal notice is relevant, appellee is hardly in a position to claim surprise at the 1976 amendments to the minimum tax. The proposed increase in rate had been under public discussion for almost a year before its enactment."

[7]In each case, unauthorized collection resulted from statutory quirks revealed by unexpected holdings of the Supreme Court.

question here as to the original liability of the taxpayers. The tax was a valid one, and the fact that the taxpayers had been indebted to the Government for the amount which was subsequently collected is not now open to dispute. * * * The question is whether these circumstances remove the case from the operation of the general rule that it is not consistent with due process to take away from a private party a right to recover the amount that is due when the act is passed. [282 U.S. at 426; fn. ref. omitted.]

In those circumstances, the Court held the retroactivity of the curative statute constitutional: [8]

It is apparent, as the result of the decisions, that a distinction is made between a bare attempt of the legislature retroactively to create liabilities for transactions which, fully consummated in the past, are deemed to leave no ground for legislative intervention, and the case of a curative statute aptly designed to remedy mistakes and defects in the administration of government where the remedy can be applied without injustice. [282 U.S. at 429.]

The majority opinion seeks to bring this case within the rule of *Graham & Foster v. Goodcell* by holding that "these amendments can and validly do apply to acts of self-dealing which occurred before the enactment of the amendments, and which, when performed, *were subject to an existing tax*." (Emphasis added.) Majority opinion, *supra* at pp. 921–923. I believe the majority opinion oversimplifies the issue.

We are not, in this case, dealing with defects in the administration or collection of a tax otherwise imposed. In *Adams* we held the statute was defective in that it *imposed no tax* until after our decision was final:

Under this statutory scheme, the second-level tax *is not imposed*, assuming no correction occurs, until the expiration of the correction period. However, the correction period does not expire until the decision of this Court with respect to the second-level tax becomes final.

* * * Pursuant to section 4941(b)(1), the expiration of the correction period is a prerequisite to the imposition of the second-level tax. If the tax is not imposed until the correction period expires, it is clearly not imposed on the date of the mailing of the statutory notice and, therefore, there is no "deficiency" as that term is defined in section 6211(a). Because petitioner has sought this Court's redetermination of a deficiency determined by respondent, and because no deficiency exists, we are bound to enter a decision for petitioner as to the second-level tax.

[*Adams v. Commissioner*, 72 T.C. at 85–86. Emphasis added.]

---

[8]Compare *Forbes Boat Line v. Board of Commissioners of Everglades Drainage District*, 258 U.S. 338 (1922).

Moreover, it was exactly this defect that Congress cured when the 1980 Act amended the second tier taxes of sections 4941 et seq. Under section 4941(b)(1), as amended, the 200-percent second tier penalty tax for self-dealing is imposed where an act of self-dealing is not corrected within the "taxable period." The "taxable period" is, in most cases, now defined under section 4941(e)(1)(A) as follows:

· SEC. 4941(e)(1). TAXABLE PERIOD.—The term "taxable period" means, with respect to any act of self-dealing, the period beginning with the date on which the act of self-dealing occurs *and ending on* the earliest of—

(A) the date of mailing a notice of deficiency with respect to the tax imposed by subsection (a)(1) under section 6212, * * *
[Emphasis added.]

By so defining the "taxable period" in the statute (and similar changes were made for the other second tier taxes), the second tier tax is now *imposed* as of the date the deficiency notice was mailed. Under prior law, such tax was not imposed until after a court decision determining the tax had become final. Thus, with respect to pending cases in this Court, the 1980 Act, if it is indeed retroactive, imposes second tier taxes in situations where no tax had yet been imposed at the time of enactment.

I recognize that the 1980 Act in many ways appears to effect what could be called a "technical fix." However, the 1980 Act, if indeed it applies to pending cases, seeks retroactively to *impose* a tax upon transactions entered into prior to enactment. Thus, the 1980 Act cannot be viewed as granting administrative powers to collect a tax previously imposed.

The foregoing analysis would be enough, in my opinion, to invalidate any retroactivity attributable to the 1980 Act, but there are further considerations weighing heavily against the act, arising out of the nature of the tax, itself. In *Commissioner v. Acker*, 361 U.S. 87 (1959), the Supreme Court held that the penalty under section 294(d)(2), I.R.C. 1939, for underestimation of estimated tax did not apply where no declaration of estimated tax had been filed.[9] The Court reasoned:

We are here concerned with a taxing Act which imposes a penalty. The law is settled that "penal statutes are to be construed strictly," * * * and

---

[9]This result has been changed under sec. 6654 of the 1954 Code. See *Commissioner v. Acker*, 361 U.S. 87, 90 n. 3 (1959).

that one "is not to be subjected to a penalty unless the words of the statute plainly impose it." [361 U.S. at 91; citations omitted.]

On that ground, the Court (invalidating a long-standing regulation) ruled that the statute was not clear enough to justify imposing the penalty. I think that rationale applies with equal force in the instant case.

In fact, I have serious doubt whether the second tier tax on self-dealers should really be called a tax at all. I think the second tier taxes are nothing more than civil penalties masquerading as excise taxes. See *United States v. Constantine*, 296 U.S. 287 (1935).[10] These so-called taxes will produce no revenue because they are not intended to be collected. Instead, they are solely intended to be a threat so ominous that no one will choose not to correct. The idea, of course, is that backing up this threat with the heavy machinery of the collection process makes the threat potent. The legislative history repeatedly refers to the second tier taxes as "sanctions." E.g., S. Rept. 91–552 (1969), 1969–3 C.B. at 445. See also *Adams v. Commissioner, supra*; 4 B. Bittker, Federal Taxation of Income, Estates, and Gifts par. 101.2 (1981). In short, the second tier taxes seek to impose civil penalties whether we also label them "taxes" or not. See *Tank Truck Rentals v. Commissioner*, 356 U.S. 30, 36 (1958). See generally Clark, "Civil and Criminal Penalties and Forfeitures: A Framework for Constitutional Analysis," 60 Minn. L. Rev. 379 (1976). I do not believe the due process clause of the Fifth Amendment permits the retroactive imposition of civil penalties for acts or omissions predating enactment.[11]

Accordingly, I would grant petitioner a partial summary judgment as to the second tier taxes either on the ground that (1) the 1980 Act, read literally, does not apply to any petitioner who files a petition in this Court because we do not know if the taxes in issue will be assessed at all, or that (2) retroactive application of the 1980 Act would be unconstitutional.

---

[10]Cf. *Mobil Oil Corp. v. Tully*, 639 F.2d 912, 918 (2d Cir. 1981), cert. denied sub nom. *Tully v. New England Petroleum Corp.*, 452 U.S. 967 (1981).

[11]I therefore would not further inquire whether any other constitutional provisions or limitations might also come into play here. See, e.g., *United States v. Constantine*, 296 U.S. 287 (1935).