HOCKADEN & ASSOCIATES, INC., PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8003–83.    Filed January 9, 1985.

*Larry H. Snyder,* for the petitioner.
*Mark S. Feuer,* for the respondent.

OPINION

COHEN, *Judge*: Respondent determined that petitioner is liable for excise taxes under section 4975(a)[1] as follows:

| TYE Aug. 31— | Amount |
| --- | --- |
| 1979 | $498 |
| 1980 | 1,162 |
| 1981 | 1,724 |

Respondent also determined that an additional tax is due from petitioner under section 4975(b) in the amount of $120,876. The issues for decision are as follows: (1) Whether the excise taxes on prohibited transactions imposed by section 4975 apply to the balances outstanding during the years in issue on certain pre-1975 loans to petitioner from an employee profit-sharing plan established by petitioner, and (2) if so, whether such an application of section 4975 constitutes an ex post facto law in violation of article I, section 9 of the U.S. Constitution.

The facts have been fully stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner is a corporation and had its principal place of business in Ohio at the time of filing the petition herein. Petitioner had previously been known as Hockaden, Lipes, Rousculp, Inc., and as H.G. Dill Co. Petitioner and its predecessors shall hereinafter collectively be referred to as petitioner.

On August 30, 1964, petitioner established a profit-sharing plan for its employees which became known as the Hockaden & Associates, Inc. Profit Sharing Plan and Trust (the Hockaden Trust or the trust). On December 14, 1964, and on February 21, 1980, the Internal Revenue Service issued

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

determination letters holding that the Hockaden Trust qualified as a tax-exempt plan under sections 401 and 501.

During the years 1971 through 1975, the Hockaden Trust lent money to petitioner, who administered the trust, as follows:

| Date | Amount |
|---|---|
| 3/ 9/71 | $20,000 |
| 6/ 4/71 | 20,000 |
| 9/17/73 | 15,000 |
| 9/20/73 | 10,000 |
| 4/ 1/75 | 28,700 |

Each of the loans were reflected in a separate note that provided for interest at 6 percent per annum, payable annually, but did not specify any repayment date. Each loan was unsecured.

Petitioner paid no interest to the trust. The aggregate outstanding balance on the loans (including accrued interest) on the dates shown was as follows:

| Date | Balance |
|---|---|
| 8/31/78 | $123,727.08 |
| 8/31/79 | 131,211.18 |
| 8/31/80 | 141,708.07 |
| 8/31/81 | 144,502.33 |
| 4/ 9/84 | 131,432.30 |

Added to the Code by title II of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93–406, sec. 2003, 88 Stat. 829, 971, section 4975 imposes two levels of excise tax on any "disqualified person" who participates in a "prohibited transaction." Section 4975(a) provides for an initial tax equal to 5 percent of the amount involved with respect to the prohibited transaction. Section 4975(b) imposes an additional tax equal to 100 percent of the amount involved, if the prohibited transaction is not timely corrected.[2] For the

---

[2]As amended by the Act of Dec. 24, 1980, Pub. L. 96–596, 94 Stat. 3469, sec. 4975 (a) and (b) provides as follows:

SEC. 4975. TAX ON PROHIBITED TRANSACTIONS.

(a) INITIAL TAXES ON DISQUALIFIED PERSON.—There is hereby imposed a tax on each prohibited transaction. The rate of tax shall be equal to 5 percent of the amount involved with respect to the prohibited transaction for each year (or part thereof) in the taxable period. The tax imposed by this subsection shall be paid by any disqualified person who participates in the prohibited

purposes of section 4975, the term "prohibited transaction" includes any lending of money or other extension of credit between a disqualified person and a trust described in section 401(a) that is tax exempt under section 501(a). Sec. 4975(c)(1)(B) and (e)(1). The term "disqualified person" includes an employer whose employees are covered under the trust. Sec. 4975(e)(1) and (2).

Respondent determined that petitioner's borrowings from the Hockaden Trust constituted prohibited transaction subject to section 4975. Respondent concluded that the loans made before January 1, 1975, the general effective date of section 4975, were subject to the excise taxes because the loans remained outstanding on that date.

Petitioner does not deny that it is a "disqualified person" as defined in section 4975 or that the loan from the Hockaden Trust to petitioner on April 1, 1975, is a "prohibited transaction" subject to the excise taxes. Petitioner argues, however, that the loans made before the general effective date of section 4975 are not taxable. Petitioner first asserts that Congress did not intend that section 4975 apply to loans made prior to January 1, 1975. Petitioner alternatively asserts that the application of section 4975 to such loans would constitute an unconstitutional ex post facto law.[3]

To evaluate petitioner's first argument, we look initially to the express language of ERISA. Section 2003(c) of ERISA, in pertinent part, prescribes the effective date of section 4975 as follows:

(c) EFFECTIVE DATE AND SAVINGS PROVISIONS.—

(1)(A) The amendments made by this section shall take effect on January 1, 1975.

---

transaction (other than a fiduciary acting only as such).

(b) ADDITIONAL TAXES ON DISQUALIFIED PERSON.—In any case in which an initial tax is imposed by subsection (a) on a prohibited transaction and the transaction is not corrected within the taxable period, there is hereby imposed a tax equal to 100 percent of the amount involved. The tax imposed by this subsection shall be paid by any disqualified person who participated in the prohibited transaction (other than a fiduciary acting only as such).

The above language is identical to that codified by ERISA, with the exception of the substitution of the term "taxable period" for the term "correction period" in sec. 4975(b). The 1980 Act cured a jurisdictional defect not in issue herein. Cf. *Howell v. Commissioner*, 77 T.C. 916 (1981); *Adams v. Commissioner*, 72 T.C. 81 (1979), affd. without published opinion 688 F.2d 815 (2d Cir. 1982).

[3]The petition also alleged a Fifth Amendment violation. Petitioner did not raise this issue in its brief, and we conclude that it has abandoned the argument for lack of merit.

(B) If, before the amendments made by this section take effect, an organization described in section 401(a) of the Internal Revenue Code of 1954 is denied exemption under section 501(a) of such Code by reason of section 503 of such Code, the denial of such exemption shall not apply if the disqualified person elects (in such manner and at such time as the Secretary or his delegate shall by regulations prescribe) to pay, with respect to the prohibited transaction (within the meaning of section 503(b) or (g)) which resulted in such denial of exemption, a tax in the amount and in the manner provided with respect to the tax imposed under section 4975 of such Code. An election made under this subparagraph, once made, shall be irrevocable. The Secretary of the Treasury or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph.

(2) Section 4975 of the Internal Revenue Code of 1954 (relating to tax on prohibited transactions) shall not apply to—

(A) a loan of money or other extension of credit between a plan and a disqualified person under a binding contract in effect on July 1, 1974 (or pursuant to renewals of such a contract), until June 30, 1984, if such loan or other extension of credit remains at least as favorable to the plan as an arm's-length transaction with an unrelated party would be, and if the execution of the contract, the making of the loan, or the extension of credit was not, at the time of such execution, making, or extension, a prohibited transaction (within the meaning of section 503(b) of such Code or the corresponding provisions of prior law)* * *

Petitioner argues that paragraph (1)(B) above indicates that Congress did not intend that section 4975 apply to transactions occurring before January 1, 1975, unless the taxpayer so elects. An examination of the purposes of paragraph (1)(B) and a reading of the paragraph in conjunction with paragraph (2) reveals the fallacy of petitioner's argument.

Paragraph (1)(B) reflects Congress' desire that the sanction for engaging in a prohibited transaction fall upon the disqualified person and not the employee benefit plan. Prior to ERISA, section 503 denied tax-exempt status to a plan that engaged in a prohibited transaction. Recognizing that such a result might impose a hardship upon innocent employees, Congress replaced the disqualification rule with the excise tax on the disqualified person. Paragraph (1)(B) merely allows the election of post-ERISA treatment where the plan has previously been disqualified under pre-ERISA law. See Conf. Rept. 93–1280 (1974), 1974–3 C.B. 415, 483.

In contrast to paragraph (1)(B), paragraph (2) addresses the issue herein, i.e., the applicability of section 4975 to conduct begun before the general effective date of the section that continues after such date. Paragraph (2)(A) exempts from

section 4975 a loan under a binding contract in effect on July 1, 1974, if the loan remains at least as favorable to the plan as an arm's-length transaction and if the loan was not a "prohibited transaction" within the meaning of section 503(b) when made. It thus appears that Congress intended section 4975 to apply to loans outstanding on January 1, 1975, if the specific conditions of paragraph (2)(A) are not satisfied.

The Conference report accompanying ERISA confirms that the exemption from section 4975 is available only if the outstanding loans did not constitute prohibited transactions under pre-ERISA law:

> To prevent undue hardship, the substitute also provides transition rules for situations where employee benefit plans are now engaging in activities which do not violate current law, but would be prohibited transactions under substitute.
>
> One of the transition rules permits the leasing or joint use of property involving a plan and a party in interest under a binding contract in effect on July 1, 1974 (or pursuant to renewals of the contract), to continue for 10 years beyond that date until June 30, 1984. For this transition rule to apply, the lease or joint use must remain at least as favorable to the plan as an arm's-length transaction with an unrelated party and must not otherwise be a prohibited transaction under present law. A similar 10-year transition rule applies to loans or other extensions of credit under a binding contract in effect on July 1, 1974 (and renewals thereof), where the loan remains as favorable as an arm's-length transaction with an unrelated party and is not prohibited under present law. [Conf. Rept. 93–1280, *supra*, 1974–3 C.B. at 486.]

Petitioner does not argue that the loans in issue qualify for the exemption under paragraph (2)(A), and such an agreement would be futile. Section 503(b), as it existed before January 1, 1975, defined a "prohibited transaction" for the purposes of section 503 to include a loan to the creator of a section 401(a) trust without receipt of adequate security. Each of the loans from the Hockaden Trust to petitioner, creator of the trust, were unsecured.

Petitioner, instead, denies that section 2003(c)(2)(A) of ERISA deals with loans made before the general effective date of section 4975. It argues that the transitional provision only relates to loans made after January 1, 1975, on the basis of a binding contract in existence on July 1, 1974. Petitioner thus concludes that paragraph (2)(A) is only applicable to contracts

to make a loan, not loans actually made, prior to the effective date of section 4975.

Petitioner's argument is not supported by the express language of the statute, is inconsistent with congressional intent behind section 2003(c)(2)(A) of ERISA, and is illogical. The second condition in subparagraph (A)—"if the execution of the contract, *the making of the loan*, or the extension of credit *was* not, at the time of such execution, *making*, or extension, a prohibited transaction (within the meaning of section 503(b)" (emphasis supplied)—obviously assumes that the transitional provision applies to a loan actually made before the effective date of section 4975.

Congress did not distinguish between an executory contract to make a loan and an executed loan contract, and justification for such a distinction has not been suggested by petitioner and is not apparent. As petitioner admits, section 2003(c)(2)(A) of ERISA "is a transitional provision or rule intended to prevent undue hardship to trusts and plans engaged in activities or courses of conduct lawful at the time of inception but made suddenly unlawful under ERISA." This reasoning applies at least as much to executed loan agreements as to executory contracts. Where, as in the present case, the loans constituted prohibited transactions under pre-ERISA law, transitional relief is not necessitated by equitable considerations and has not been provided.

Petitioner asserts generally that "ERISA was intended to operate prospectively only" and cites cases holding that various provisions of title I of ERISA do not apply where the event on which the plaintiff bases his claim occurred before the effective date of the relevant provision. See, e.g., *Reuther v. Trustees of Trucking Employees of Passaic and Bergen County Welfare Fund*, 575 F.2d 1074 (3d Cir. 1978); *Martin v. Bankers Trust Co.*, 565 F.2d 1276 (4th Cir. 1977); *Morgan v. Laborers Pension Trust Fund for Northern California*, 433 F. Supp. 518 (N.D. Cal. 1977).

Applying section 4975 to the loans in the present case, however, does not constitute a retroactive application of ERISA. The event giving rise to petitioner's liability under section 4975 is not petitioner's obtaining loans from the trust prior to January 1, 1975, but petitioner's maintaining the loans after that date. As the case law under title I illustrates,

imposing the tax upon petitioner's post-1975 conduct involves a prospective application of ERISA.[4]

In *Morrissey v. Curran*, 567 F.2d 546 (2d Cir. 1977), the plaintiff alleged that the defendant plan administrator purchased an imprudent investment prior to the effective date of the fiduciary responsibility rules. Although the court stated that the provisions of ERISA are not retroactive, the court held that the failure to liquidate an unwise investment within a reasonable time after the fiduciary responsibility provisions became effective would constitute an ERISA violation. The court thus recognized that pre-ERISA conduct might involve a "continuing wrongdoing" for which the defendant would be liable. *Morrissey v. Curran*, 567 F.2d at 547–548.

In both *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629 (W.D. Wis. 1979), and *Donovan v. Bryans*, 566 F. Supp. 1258 (E.D. Pa. 1983), the courts applied the rule of *Morrissey* to "prohibited" loans made before the effective date of the fiduciary responsibility provisions but remaining outstanding after that date. The courts held that, although the making of the loans did not constitute an ERISA violation, the maintenance of the loans after the effective date of ERISA is prohibited by the fiduciary responsibility rules. As the court in *Donovan* stated:

In reaching its determination, the court [in *Freund*] explained that it does not constitute a retroactive application of ERISA to apply ERISA's fiduciary standards to the post-ERISA maintenance of an investment that was originally made prior to ERISA. * * * Since *Freund*, the courts have simply accepted without question that ERISA does not insulate loans made to parties in interest merely because they were made prior to January 1, 1975. * * * [566 F. Supp. at 1263.]

See also *Pension Benefit Guaranty Corp. v. Greene*, 570 F. Supp. 1483 (W.D. Pa. 1983), affd. without published opinion 727 F.2d 1100 (3d Cir. 1984).

---

[4]Tit. I of ERISA contains various provisions regulating employee benefit plans. Part 4 of tit. I (secs. 401 through 414) prescribes rules of fiduciary responsibility. In defining and proscribing certain "prohibited transactions," sec. 406 of ERISA generally parallels Code sec. 4975. See Conf. Rept. 93–1280 (1974), 1974–3 C.B. 415, 467. Thus ERISA sec. 406(a)(1)(B) prohibits the lending of money or other extension of credit between a plan and a party in interest. The general effective date of the fiduciary responsibility provisions is Jan. 1, 1975. ERISA, sec. 414(a). Sec. 414(c)(1), however, provides a transitional exemption from sec. 406 that is virtually identical to sec. 2003(c)(2)(A) with respect to Code sec. 4975.

Our conclusion that the application of section 4975 to petitioner's loans does not constitute a retroactive application of ERISA also disposes of petitioner's ex post facto argument. The ex post facto clause prohibits only the retroactive penalizing of past conduct. The prohibition does not apply to the imposition of a penalty for the continuation of conduct that previously was not subject to the penalty. *Samuels v. McCurdy*, 267 U.S. 188 (1925); *Chicago & Alton Railroad v. Tranbarger*, 238 U.S. 67 (1915).

We note that petitioner can avoid payment of the section 4975(b) tax by correcting the prohibited loans before our decision herein becomes final. Secs. 4961 and 4962.

To reflect stipulations by the parties,

*Decision will be entered under Rule 155.*