Raymond J. DONOVAN, Secretary of the
United States Department of Labor

v.

Gerald W. BRYANS, Daniel R. Kelly,
Jr., Lewis Wilson and The
Finest, Inc.

Civ. A. No. 82–1786.

United States District Court,
E.D. Pennsylvania.

June 30, 1983.

Larry D. Newsome, U.S. Dept. of Labor, Washington, D.C., for plaintiff.

Gerald W. Bryans pro se.

Robert B. Wolf, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for defendant Kelly.

Robert T. Seiwell, Media, Pa., for defendant Wilson.

## SUR PLEADINGS AND PROOF

LUONGO, Chief Judge.

This civil action was brought by Raymond J. Donovan, Secretary of the United States Department of Labor, pursuant to Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, alleging numerous breaches of fiduciary duty by defendants Gerald W. Bryans and Daniel R. Kelly, Jr., in their capacity as trustees of an employee benefit plan covered by ERISA. Defendant, Lewis Wilson, has been joined under Fed.R.Civ.P. 19 as a party needed for a just adjudication of the lawsuit. Following a non-jury trial on April 18, 1983, the parties submitted proposed findings and memoranda of law. Based on the pleadings, proof and submissions of the parties, I make the following

## FINDINGS OF FACT

1. The Finest Incorporated Profit Sharing Trust (the Plan) was established sometime prior to January 1, 1973, by The Finest Incorporated (Finest), a Pennsylvania corporation engaged in the business of commercial masonry.

2. The Plan is an employee benefit plan or an employee pension benefit plan within the meaning of § 3 of ERISA, 29 U.S.C. § 1002.

3. Finest was the "plan sponsor" of the Plan within the meaning of § 3(16)(B)(i) of ERISA, 29 U.S.C. § 1002(16)(B)(i), until it was declared bankrupt in 1978.

4. Daniel R. Kelly, Jr., and Gerald W. Bryans, defendants in this action, were officers of Finest and owners of more than 80 percent of its outstanding stock from or before January 1, 1973 until Finest was declared bankrupt in 1978.

5. Kelly and Bryans have served as co-trustees of the Plan since its inception.

6. As trustees and fiduciaries of the Plan, Kelly and Bryans are "parties in interest" within the meaning of § 3(14)(A) of ERISA, 29 U.S.C. § 1002(14)(A).

7. The duties of the trustees as specified in the Plan included, *inter alia,* the safeguarding and administration of the trust principal and the maintenance of full and complete records necessary for the administration of the Plan.

8. Kelly and Bryans retained the law firm of Bluestein & Prusky to act as administrator of the Plan.

9. On or about April 1, 1973, Kelly and Bryans, in their capacity as Plan trustees, approved a loan of $60,000 to Finest.

(a) This loan was payable, together with interest at 9% per annum, over a period of five years. Under the terms of the loan, the Plan was to be given a security interest in all of the scaffolding equipment then owned by Finest to secure the loan. Although a security agreement was executed, Kelly and Bryans never perfected the Plan's security by the filing of appropriate financing statements.

(b) On April 1, 1976, after three years of regular payments of principal and interest, Finest defaulted on its obligation to the Plan, leaving an unpaid principal balance of $26,222.

(c) Between April 1, 1976 and the time Finest filed for bankruptcy in 1978, Kelly and Bryans did nothing to secure repayment of either the $26,222 unpaid principal or the interest due thereon.

(d) Finest's obligation to the Plan was discharged in bankruptcy in 1978.[1]

10. On or about January 14, 1974, Bryans received a loan of $15,000 from the Plan. This loan was approved by Bryans himself and later ratified by Kelly.

(a) The loan to Bryans was payable, together with interest at 8¾% per annum, over a five-year period.

(b) A promissory note and mortgage were drafted by Bluestein & Prusky to document the loan, but Bryans never executed either instrument.

(c) Bryans and Kelly did not act on the advice of counsel in approving the loan to Bryans.

(d) Bryans has made no payments of principal or interest owing on the loan, and neither he nor Kelly made reasonable efforts to obtain repayment of the loan. The entire principal amount of $15,000, together with interest from January 14, 1974, remains outstanding.

11. On or about July 1, 1976, Kelly and Bryans, in their capacity as trustees of the Plan, approved a loan of $25,000 to Lewis H. Wilson, an associate of Kelly and Bryans in another corporation. Kelly and Bryans knew and intended that the proceeds of the Wilson loan would be transferred to Finest.

(a) This loan was payable, together with interest at 8¼% per annum, over a five-year period.

(b) The loan was secured by a mortgage on real property owned by Wilson and his wife in Delaware County, Pennsylvania.

(c) The mortgage and promissory note executed by Wilson and his wife in conjunction with the loan were prepared by Bluestein and Prusky. Kelly and Bryans did not, however, act on the advice of counsel in determining the propriety of the loan.

(d) No portion of the principal or interest due on the $25,000 loan to Wilson has ever been paid.

(e) Bryans and Kelly have not made reasonable efforts to secure repayment of the loan.

12. The promissory note executed by Finest in connection with the April 1, 1973 loan contained an acceleration provision authorizing the Plan to declare the entire principal sum and interest immediately due and collectible in the event of Finest's failure to pay regular monthly installments. Despite the default of Finest on April 1, 1976, see Finding 9(b), Kelly and Bryans never exercised the Plan's option under the acceleration provision.

13. A promissory note and mortgage were prepared by Bluestein and Prusky to evidence and secure the January 14, 1974 loan to Bryans. Bryans never executed either document, see Finding 10(b), and Kelly and Bryans as trustees failed to make reasonable efforts to secure Bryans' execution of the promissory note and mortgage. The promissory note contained an acceleration provision similar to that outlined in Finding 12. Had the promissory note been executed, the trustees would have had the undisputed right, at any time after January 14, 1974, to demand immediate repayment of the loan to Bryans.

14. In the normal course of the Plan's affairs, the trustees would not approve a loan of the Plan's assets without receiving both a written promise to repay and adequate security for the loan.

15. After January 1, 1975, Kelly and Bryans failed to make reasonable efforts— if they made any—to obtain repayment of any of the loans discussed in Findings 9–11.

16. After January 1, 1975, Kelly and Bryans maintained the 1973 loan to Finest and the 1974 loan to Bryans notwithstanding that these loans were not at least as favorable to the Plan as a loan to an unrelated party would be.

17. The $26,222 principal due on the 1973 loan to Finest is now uncollectible

---

1. The exact date of the bankruptcy does not appear from the record.

because of the failure of Kelly and Bryans to discharge their responsibilities under ERISA.

18. The $15,000 principal due on the 1974 loan to Bryans is now uncollectible because of the failure of Kelly and Bryans to discharge their responsibilities under ERISA.

19. Wilson was in collusion with Kelly and Bryans when the latter breached their fiduciary duties under ERISA by approving the July 1, 1976 loan of $25,000.

20. Wilson immediately transferred the proceeds of the $25,000 loan to satisfy his personal obligation to Finest.

21. Wilson received consideration for the loan and is obligated to repay it.

## DISCUSSION

A fiduciary of an employee benefit plan is personally liable under § 409 of ERISA, 29 U.S.C. § 1109, to make good any losses to the plan resulting from the fiduciary's breach of any of the responsibilities, obligations or duties imposed by ERISA. I have no difficulty in concluding that defendants Kelly and Bryans breached their fiduciary obligations under ERISA with respect to each of the three loans discussed in Findings 9–11. Kelly and Bryans admit that the Plan is an employee benefit plan covered by ERISA, and they admit that they have served as trustees of the Plan since its creation. Moreover, the terms of the Plan agreement confer authority on Kelly and Bryans to exercise discretion with respect to the management of the Plan and its assets. They, therefore, are "fiduciaries" as that term is defined by ERISA, 29 U.S.C. § 1002(21)(A), and their actions as trustees of the Plan are not immune from scrutiny under the minimum standards for fiduciaries set by ERISA.

█ The fiduciary standards codified by ERISA and implicated in this case are two-fold: one general and one specific. The general standard is embodied in § 404(a) of ERISA, 29 U.S.C. § 1104(a), and requires the fiduciary of an employee benefit plan to act solely in the interest of the plan partici-

pants and beneficiaries, and with the "care, skill, prudence and diligence" that a prudent man familiar with such matters would exercise under similar circumstances. Encompassed within this broad "prudent man" standard are several narrower duties which have evolved under the law of trusts. For purposes of this case, however, it is sufficient to take note only of the fiduciary's duty to take reasonable steps to realize on claims held in trust. *See Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 641 (W.D.Wis.1979); *Restatement (Second) of Trusts* § 177 (1959). *See also Nedd v. United Mine Workers,* 556 F.2d 190 (3d Cir. 1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978).

The second and more specific standard is set forth in § 406(a) of ERISA, 29 U.S.C. § 1106(a), which generally prohibits a fiduciary from engaging in transactions with a "party in interest," a term defined by § 3(14) of ERISA, 29 U.S.C. § 1002(14), to include any fiduciary and any employer of employees covered by an employee benefit plan. Kelly, Bryans and Finest are all parties in interest with respect to the Plan. Of the *per se* prohibitions of § 406(a), the concern in this case is with § 406(a)(1)(B) which prohibits a fiduciary from "engag[ing] in a transaction, if he knows or should know that such transaction constitutes a direct or indirect lending of money or other extension of credit between the plan and a party in interest."

█ In assessing the actions of Kelly and Bryans under these standards, I am mindful that ERISA's fiduciary provisions did not become effective until January 1, 1975. 29 U.S.C. § 1114. Nevertheless, the Secretary contends, and the evidence overwhelmingly demonstrates, that Kelly and Bryans breached their obligations under § 404(a) of ERISA by failing to make reasonable efforts after January 1, 1975 to collect both the pre-ERISA loans to Finest and Bryans and the 1976 loan to Wilson, the proceeds of which were transferred to Finest.

█ Bryans and Kelly also violated § 406(a)(1)(B) by approving the 1976 loan to

Wilson with knowledge that Finest, a party in interest, was to be the actual recipient of the loan proceeds. Indeed, it appears that the loan was structured in this fashion solely for the purpose of concealing Finest as the true recipient of the loan. Kelly and Bryans admitted their knowledge that Finest was to receive the proceeds, yet the annual report filed with the Internal Revenue Service for the 1976 plan year represented that the Plan had not engaged in any transactions with a person known to be a party in interest. (Secretary's Exhibit N). This representation was patently false.

█ Finally, the Secretary contends that Kelly and Bryans violated § 406(a)(1)(B) by *maintaining* the pre-ERISA loans—the 1973 loan to Finest and the 1974 loan to Bryans—after the fiduciary provisions of ERISA took effect on January 1, 1975. The Secretary's argument is founded on the so-called transitional rule set forth in § 414(c)(1) of ERISA which declares that § 406 shall not apply "until June 30, 1984, to a loan of money ... between a plan and a party in interest under a binding contract in effect on July 1, 1974 ... *if such loan ... remains at least as favorable to the plan as an arm's length transaction with an unrelated party would be ....*" 29 U.S.C. § 1114(c)(1) (emphasis added). Thus, the Secretary maintains that the exemption from § 406 provided by § 414(c)(1) is of no benefit to Kelly and Bryans because the continuance of the pre-ERISA loans to Finest and Bryans was not on terms at least as favorable as an arm's length transaction with an unrelated party.

Kelly and Bryans respond that the pre-ERISA loans were not prohibited transactions when made. They do not deny that the loans would have been unlawful had they been made subsequent to January 1, 1975, but they argue that it would be grossly unfair and contrary to the intent of Congress to predicate liability under ERISA on pre-ERISA conduct.

While superficially appealing, the argument of Kelly and Bryans has been made previously and rejected. In *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629 (W.D.

Wis.1979), which is directly apposite to the instant case, the defendants made pre-ERISA loans to a party in interest and maintained those loans after ERISA became effective. Finding that the loans were not at least as favorable to the plan as an arm's length transaction, the *Freund* court held that the exemption of § 414(c)(1) was unavailable and that defendants had breached their responsibilities to the plan under § 406(a)(1)(B) by failing to terminate or modify the loans. 485 F.Supp. at 638–39. In reaching its determination, the court explained that it does not constitute a retroactive application of ERISA to apply ERISA's fiduciary standards to the post-ERISA maintenance of an investment that was originally made prior to ERISA. *Id.* at 638 n. 3. Since *Freund,* the courts have simply accepted without question that ERISA does not insulate loans made to parties in interest merely because they were made prior to January 1, 1975. *E.g., Donovan v. Williams,* No. C–78–82 Y, slip op. (N.D.Ohio Feb. 2, 1983); *Parker v. Marshall,* No. C–78–0263, slip op. (D.Utah Nov. 10, 1980). I am also persuaded that *Freund* was correctly decided.

It remains to be answered whether the loans to Finest and Bryans remained at least as favorable to the Plan as an arm's length transaction with an unrelated party would have been. With respect to the 1974 loan to Bryans, there can be little doubt that the Plan's position was far less satisfactory than it would have been had the loan been made to an unrelated party. Bryans admitted that normally a loan would not have been made by the Plan in the absence of collateral and a written promise to repay. (Bryans N.T., Document 36, at 28–30). In the case of the loan to Bryans, however, no security was given and no promissory note was ever executed. The Plan was left instead with an unsecured, oral promise to repay. Accordingly, I conclude that Kelly and Bryans breached their duties under § 406(a)(1)(B) by maintaining the Bryans loan after January 1, 1975.

For similar reasons I conclude that Kelly and Bryans breached their responsibilities

under § 406(a)(1)(B) by maintaining the 1973 loan to Finest on terms much less favorable to the Plan than would have been demanded of an unrelated party. Although the Finest loan was evidenced by a written promise to repay, Kelly and Bryans failed to perfect the security interest which Finest purportedly gave to secure the loan (Kelly N.T., Document 37, at 38; Bryans N.T., Document 36, at 20–21). At a minimum, upon learning after January 1, 1975—well over a year prior to the bankruptcy—that Finest was in financial difficulty, Kelly and Bryans should have immediately filed the security agreement received from Finest in 1973 in order to perfect the Plan's security interest in the company's scaffolding which had been pledged as collateral. Instead, they left the loan in an unsecured position, thereby breaching their duties under § 406(a)(1)(B).

Accordingly, for reasons discussed above, I conclude that Kelly and Bryans breached their duties to the Plan under §§ 404(a) and 406(a)(1)(B) of ERISA with respect to each of the three loans.

## RELIEF

■ ERISA confers broad authority on the Secretary to seek legal and equitable relief by way of a civil action against a fiduciary for breach of the fiduciary obligations and responsibilities imposed by ERISA. 29 U.S.C. § 1132(a)(2), (5)–(6). *See Marshall v. Snyder,* 572 F.2d 894, 901 (2d Cir.1978). In particular, the Secretary is authorized to seek relief under § 409(a) of ERISA, 29 U.S.C. § 1109(a), which provides in pertinent part:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem

appropriate, including removal of such fiduciary. . . .

Moreover, the Secretary may in appropriate circumstances seek the appointment of a receiver. *Donovan v. Bierwirth,* 680 F.2d 263, 276 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); *Marshall v. Snyder, supra,* 572 F.2d at 901.

■ The relief to be provided should be carefully tailored to effectuate the remedial policies of ERISA and to best promote the interests of the Plan, its participants and beneficiaries. *Eaves v. Penn,* 587 F.2d 453, 462–63 (10th Cir.1978). The path toward that relief is perhaps best guided by the law of trusts. *Id. See Nedd v. United Mine Workers,* 556 F.2d 190, 211 (3d Cir.1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978). The relief sought by the Secretary is expansive. In addition to the removal of Kelly and Bryans as trustees and the appointment of a successor trustee, the Secretary seeks to impose joint and several liability to the Plan on Kelly and Bryans for the entire principal amount outstanding on the three loans in question. Moreover, to restore the profits lost to the Plan as a result of the trustees' breach of duty, the Secretary requests that interest on the loans, computed at the prevailing federal reserve rate and compounded monthly from January 1, 1975, be added to the judgment entered against Kelly and Bryans. Finally, the Secretary seeks to enjoin Kelly and Bryans from serving as trustees of any employee benefit plan covered by ERISA for the next five years. As to defendant Wilson, the Secretary asks that judgment be entered against him—making him jointly and severally liable with Kelly and Bryans—on the July 1, 1976 loan.

Kelly argues that personal liability should not be imposed upon him in any amount. He contends first that the loss on the 1973 loan to Finest would have occurred even if the trustees had not breached their duties to the Plan. His position is that the 1973 loan was proper when made and that any attempt to collect it once it became improper would have resulted only in the earlier demise of Finest. As for the loans to

Bryans and Wilson, Kelly argues that no showing has been made that these loans are uncollectible. Therefore, if judgment is to be entered on these loans, he maintains that it should be entered against the respective obligors, but not against him.

Bryans' contentions are similar. He argues that judgment should be entered against Wilson on Wilson's individual obligation to the Plan, and he joins in Kelly's contention that the loss on the loan to Finest would have occurred even in the absence of a breach of fiduciary duty. Finally, Bryans admits his personal obligation to the Plan on the 1974 loan and does not contest the entry of judgment against him on the obligation so long as interest on the loan is computed at the six percent default rate specified in the promissory note, which incidentally he never executed.

Wilson admits that he signed the promissory note and mortgage in connection with the 1976 loan, but denies all liability under ERISA. Since all parties concerned understood that Finest was to receive the loan proceeds and repay the loan, he contends that there is no enforceable obligation between the Plan and him. Consequently, he maintains that judgment cannot be entered against him.

■ I first address defendants' personal liability to the Plan with respect to each of the loans. There is presently an outstanding principal balance of $26,222 on the April 1, 1973 loan to Finest. From the time that loan fell into default in April 1976 until Finest declared bankruptcy in 1978, no efforts were made by Kelly and Bryans to collect the loan. In 1978, Finest's obligation was discharged in bankruptcy. These facts demonstrate by a preponderance of the evidence that the balance of $26,222 is uncollectible. The burden of persuasion thus shifts to Kelly and Bryans to establish that the loss to the Plan would have occurred even if they had not, after January 1, 1975, maintained the loan in violation of § 406(a)(1)(B) and even if they had not violated § 404(a) by failing to make reasonable efforts to obtain repayment. *See*

*Nedd v. United Mine Workers, supra,* 556 F.2d at 211.

I find that Kelly and Bryans have not come forward with sufficient evidence to sustain their burden. They have offered only their self-serving statements that their failure to demand repayment upon default forestalled the bankruptcy of Finest by more than a year, thereby benefitting Finest's employees, the Plan participants. Even if I were to accept these assertions, which I do not, they do not explain the failure of Kelly and Bryans to perfect the Plan's security interest in the collateral pledged in support of the loan. Kelly and Bryans, therefore, take too narrow a view in arguing that their conduct forestalled a loss to the Plan. On the contrary, their actions, or lack thereof, most certainly caused the Plan to lose the $26,222 outstanding on the loan to Finest. Accordingly, I conclude that Kelly and Bryans are personally liable to the Plan to make good on this loss. Judgment therefore will be entered in favor of the Plan and against Kelly and Bryans, jointly and severally, for $26,222.

■ As a measure of the Plan's lost profits on the Finest loan, the Secretary seeks to add interest, compounded monthly at the then prevailing federal reserve rate from April 1, 1976 to the present, to the judgment to be entered against Kelly and Bryans. In my view, the Secretary's proposal for measuring the Plan's lost investment opportunities would create a windfall for the Plan. The determination of the appropriate rate of interest to compensate the beneficiaries for the trustees' breach of duty is committed to the court's discretion. *See Gilliam v. Edwards,* 492 F.Supp. 1255 (D.N.J.1980). As a general rule, however, where a trustee is chargeable with interest, he is chargeable with simple interest at the legal rate. *Restatement (Second) of Trusts, supra,* § 207. There are exceptions, of course, to the general rule, and the Secretary argues that one of those exceptions is operable here. In particular, the Secretary argues that compound interest is appropriate because Kelly and Bryans under the

terms of the trust were under a duty to invest and reinvest the Plan's assets. That may well be, but on the evidence presented, the loans in question and a fourth loan to Kelly were the only investments ever made by the Plan. All of these loans bore interest rates of 8¼ to 9 percent per annum. In my view, the 9 percent rate provides an accurate measure of the Plan's normal return on investment opportunities. Accordingly, I will add simple interest at the rate of 9 percent per annum to the $26,222 judgment to be entered against Kelly and Bryans. Interest will be computed from April 1, 1976 until the date of judgment.

I am also satisfied by a preponderance of the evidence that the $15,000 principal due on the Bryans loan has been lost to the Plan because of the trustees' failure to discharge their responsibilities under ERISA. To be sure, Bryans fully admits his obligation to repay the loan. But, in the eight years since the effective date of ERISA's fiduciary standards, Bryans has done absolutely nothing to demonstrate his good faith in offering to repay the loan. In the meantime, he has seen his investment in Finest vanish, and has witnessed the depletion of his personal assets by creditors of Finest who were fortunate enough to obtain his personal guarantee. In short, Bryans is presently unable to repay the loan (Kelly N.T., Document 37, at 40–41). Kelly and Bryans are equally responsible for this loss to the Plan. Therefore, I conclude that defendant Kelly is jointly and severally liable with Bryans for the $15,000 principal due on the 1974 loan to Bryans. Accordingly, in addition to the judgment to be entered against them for the principal and interest due on the Finest loan, I will enter judgment in favor of the Plan and against Kelly and Bryans for $15,000. And, for reasons discussed above, I will add to the judgment an amount for lost profits equal to 9 percent per annum simple interest from January 1, 1975 until the date of judgment. A judgment will also be entered against Bryans individually for the interest due on the loan at the contract rate of 8¾ percent from January 14, 1974 to December 31, 1974.

I turn now to the 1976 loan to Wilson, the proceeds of which went to Finest. As discussed earlier, Kelly and Bryans are liable to the Plan for the loss sustained as a result of this improper loan. Whether Wilson is liable to the Plan under ERISA is a bit more complicated. Wilson argues that he has no obligation to the Plan because he never received any loan proceeds. Furthermore, he argues that even if he is obligated to the Plan, this court has no power to enforce the obligation because he is not a fiduciary of the Plan and subject matter jurisdiction over claims against non-fiduciaries is not conferred by ERISA. I reject each of these arguments.

■ Wilson's argument that he is not obligated to repay the 1976 loan is devoid of evidentiary support. I understand fully that the proceeds of the loan went to Finest, but the undisputed evidence is that it was always Wilson's responsibility to repay the loan. Bryans testified, and his testimony is uncontradicted, that Wilson agreed to the transaction to satisfy his indebtedness to Finest. The effect of the loan, therefore, was to substitute the Plan for Finest as Wilson's obligee. Accordingly, Wilson received an economic benefit from the loan, and his obligation to repay it is supported by adequate consideration.

■ Whether a federal district court has the power to enforce Wilson's obligation is less clear. To be sure, Wilson is not a fiduciary of the Plan. Nevertheless, ERISA does authorize the Secretary to bring a civil action

(A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter.

ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5). This provision, as well as the remainder of ERISA's enforcement provisions, was "designed specifically to provide . . . the Secretary . . . with broad remedies for redressing or preventing violations of [ERISA]." S.Rep. 127, 93d Cong., 1st Sess. 35 (1973),

*reprinted in* [1974] *U.S.Code Cong. & Ad. News,* 4639, 4838, 4871. In light of its stated purpose, I believe the reach of § 502(a)(5) is sufficiently extensive to permit the imposition of an equitable remedy against Wilson on the facts presented. Wilson was an associate of Kelly and Bryans in a construction business that had several close ties to Finest. The two businesses shared office space and occasionally performed services at the same job site. At the time the 1976 loan was made, Wilson knew of Finest's financial difficulties. More importantly, he had discussed the terms of the proposed transaction with Kelly and Bryans prior to the making of the loan. Wilson may not have been a fiduciary of the Plan, but he certainly knew that Kelly and Bryans were. I do not accept his assertion that he was an innocent party to the transaction. Rather, the preponderance of the evidence supports the inference that Wilson was well aware of the breach of trust committed by Kelly and Bryans, and that he actively collaborated with them to further their joint and individual interests.

As discussed above, the economic reality is that Wilson did receive the entire benefit of the loan. Having benefited from his collaboration with Kelly and Bryans in the latters' breach of duty to the Plan, Wilson is under a duty to make restitution to the Plan for the benefit received. *Restatement of Restitution* § 138(2) (1937). The benefit here is the $25,000 which Wilson, to the detriment of the Plan, used to extinguish his debt to Finest. Therefore, he must make restitution of this amount, with interest from the date he knowingly assisted Kelly and Bryans in violating their trust. *Id.* §§ 150, 156. Accordingly, judgment will be entered against Wilson and in favor of the Plan in the amount of $25,000, together with interest at 9 percent per annum computed from July 1, 1976 to the date of judgment. The imposition of this equitable remedy is necessary to redress the blatant fiduciary violations which could not have occurred but for his assistance and is appropriate under § 502(a)(5) of ERISA.

Notwithstanding that I have ordered restitution from Wilson, I will also enter judgment against Kelly and Bryans for the $25,000 principal due on the loan, together with interest at the rate of 9 percent per annum from the date of the loan. Because of their failure to faithfully discharge their duties to the Plan, it now appears that Wilson will be unable to repay his obligation to the Plan. The business he owned with Kelly and Bryans is now bankrupt. In addition, the validity of the mortgage securing his loan is clouded as a result of the trustees' blunders. Wilson is the sole obligor on the $25,000 note, yet the property securing the note is owned jointly by Wilson and his wife, Naomi. And, there is uncertainty as to whether Wilson's wife actually signed the mortgage instrument. The mortgage does bear the signature of a "Naomi Wilson," but Kelly, the witness to the signatures on the mortgage, has no recollection that Wilson's wife executed the mortgage in his presence. Indeed, he admitted that it was extremely possible that she did not. The confusion is further complicated because the instrument purports to have been signed on July 1, 1976. The acknowledgement, however, is dated July 23, 1976, and Kelly admits that he never met the notary who purportedly acknowledged the signatures. While these defects may be technical and of no relevance to the validity of the mortgage, the likelihood is nevertheless raised that the validity of the mortgage will ultimately be determined in subsequent legal proceedings. Indeed, counsel for Wilson apparently intends to contest the validity of the mortgage for he has represented to the court that the mortgage is "probably worthless." At this point, it would be unconscionable to allow Kelly and Bryans to avoid liability for the $25,000 plus interest due on the Wilson loan solely because the Plan may ultimately recoup its loss by vindicating the validity of the Wilson mortgage in a later lawsuit. At the same time, the Plan is entitled only to a single satisfaction of the amounts due on the Wilson loan. Accordingly, to the extent that the judgment to be entered against Kelly and Bryans is called upon to satisfy

**1268**

what primarily is Wilson's obligation to the Plan, Kelly and Bryans will be subrogated to the rights of the Plan to proceed against Wilson on the note and mortgage.

■ The Secretary also seeks to remove Kelly and Bryans as trustees of the Plan and to enjoin them, for five years, from serving as fiduciaries of any employee benefit plan covered by ERISA. In my view, such equitable relief is appropriate and necessary to protect the interests of the Plan and its beneficiaries, as well as to further the remedial purposes of ERISA. Kelly and Bryans, were they to continue as trustees of the Plan, would be responsible for enforcing the judgments against themselves individually and for proceeding against Wilson. Their failures in the past to faithfully discharge similar duties to the Plan furnish ample reason why they should not now be entrusted with this responsibility. Accordingly, I will order that they be relieved of their responsibilities as trustees, and to protect against the possibility of any future injury, I will enjoin them from serving as fiduciaries of any covered employee benefit plan for a period of five years.

The removal of Kelly and Bryans as trustees of the Plan requires that I accede to the Secretary's request that a suitable successor be appointed to collect the assets of the Plan and to distribute those assets in accordance with the terms of the Plan and ERISA. Accordingly, a separate hearing will be scheduled for the purpose of determining an appropriate successor.

## CONCLUSIONS OF LAW

1. Subject matter jurisdiction over this civil action exists under § 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

2. Venue is proper in this district under § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

3. The Secretary is authorized to maintain this action on behalf of the Plan. 29 U.S.C. § 1132(a).

4. The fiduciary responsibilities imposed by ERISA became effective with respect to the Plan on January 1, 1975. 29 U.S.C. § 1114.

5. "The fiduciary responsibility section [of ERISA], in essence codifies and makes applicable to ... fiduciaries certain principles developed in the evolution of the law of trusts." S.Rep. No. 127, 93d Cong., 1st Sess. 29 (1973), *reprinted in* 1974 *U.S.Code Cong. & Ad.News* 4838, 4865. *See also Eaves v. Penn,* 587 F.2d 453, 462 (10th Cir. 1978).

6. Among the fiduciary duties codified by ERISA is the fiduciary's obligation to discharge "duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

7. Among the duties encompassed by the prudent man standard is the duty to enforce valid claims held by the trust. *Restatement (Second) of Trusts* § 177 (1959). *See* 2 A. Scott, *The Law of Trusts* § 177 (3d ed. 1967).

8. Kelly and Bryans breached their fiduciary responsibilities to the Plan in violation of § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), by failing to make reasonable efforts, after January 1, 1975, to obtain repayment of the April 1, 1973 loan to Finest and the January 14, 1974 loan to Bryans.

9. A fiduciary is prohibited under § 406(a)(1)(B) of ERISA, 29 U.S.C. § 1106(a)(1)(B), from "engag[ing] in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—... (B) lending of money or other extension of credit between the plan and a party in interest."

10. Kelly and Bryans violated § 406(a)(1)(B) of ERISA by approving the July 1, 1976 loan to Wilson, knowing that the proceeds of the loan would be paid to Finest, a party in interest.

11. Kelly and Bryans breached their fiduciary responsibilities to the Plan in violation of § 406(a)(1)(B) of ERISA by maintaining the pre-ERISA loans to Finest and Bryans after January 1, 1975.

12. As a result of the violations of §§ 404 and 406 set forth in Conclusions 8, 10 and 11, Kelly and Bryans are "personally liable to make good to [the Plan] any losses . . . resulting from each such breach. . . ." ERISA § 409(a), 29 U.S.C. § 1109(a).

13. Kelly and Bryans are jointly and severally liable to the Plan for the $26,222 principal lost on the April 1, 1973 loan to Finest. They are also jointly and severally liable for $17,109.85 which constitutes the amount due for interest on the lost principal, computed at the rate of 9 percent per annum from April 1, 1976 to the date of judgment.

14. Kelly and Bryans are jointly and severally liable to the Plan for the $15,000 principal lost on the January 14, 1974 loan to Bryans. They are also jointly and severally liable for $11,475 which constitutes the amount due for interest on the lost principal, computed at the rate of 9 percent per annum from January 1, 1975 to the date of judgment.

15. Bryans is individually liable to the Plan for $1,265.10 which constitutes the amount due for interest on the $15,000 loan, computed at the rate of 8¾ percent per annum from January 14, 1974 to December 31, 1974.

16. Kelly and Bryans are jointly and severally liable to the Plan for the $25,000 principal lost on the July 1, 1976 loan to Wilson. They are also jointly and severally liable for $15,750 which constitutes the amount due for interest on the lost principal, computed at the rate of 9 percent per annum from July 1, 1976 to the date of judgment.

17. Wilson colluded with Kelly and Bryans in the latters' breach of their duties to the Plan in connection with the July 1, 1976 loan.

18. The Secretary has the power to seek equitable relief against Wilson under 29 U.S.C. § 1132(a)(5).

19. Wilson is under a duty to make restitution to the Plan for the $25,000 loan improperly obtained from the Plan. Wilson is also under a duty to make restitution in the amount of $15,750 which constitutes interest due on the improper loan, computed at the rate of 9 percent per annum from July 1, 1976 to the date of judgment.

20. Judgment will be entered in favor of the Plan and against Kelly and Bryans jointly and severally in the amount of $110,556.85. (See Conclusions 13, 14 and 16).

21. Judgment will be entered in favor of the Plan and against Bryans in the amount of $1,265.10. (See Conclusion 15).

22. Judgment will be entered in favor of the Plan and against Wilson in the amount of $40,750. (See Conclusion 19).

23. Bryans and Kelly will be subrogated to the rights of the Plan to proceed against Wilson on the note and mortgage to the extent that judgment against them is called upon to satisfy Wilson's obligation to the Plan.

24. Kelly and Bryans will be enjoined from further service as trustees of the Plan, and they will, as well, be enjoined from serving as fiduciaries of any employee benefit plan covered by ERISA for a period of five years.

25. Kelly and Bryans will be enjoined to cooperate with their court-appointed successor by turning over all available Plan records and documents and by assisting in the determination and location of all possible Plan participants and beneficiaries.

### ORDER

This 30th day of June, 1983, it is ORDERED, ADJUDGED and DECREED that:

1. JUDGMENT is entered in favor of The Finest Incorporated Profit Sharing Plan (the Plan) and against defendants, Gerald W. Bryans and Daniel R. Kelly, Jr., jointly and severally, in the amount of $110,556.85;

2. JUDGMENT is entered in favor of the Plan and against defendant, Gerald W. Bryans, individually, in the amount of $1,265.10;

3. JUDGMENT is entered in favor of the Plan and against defendant Lewis Wilson in the amount of $40,750;

4. To the extent that Kelly and Bryans shall hereafter satisfy Wilson's obligation to the Plan, they shall be SUBROGATED to the Plan's rights against Wilson;

5. Defendants, Gerald W. Bryans and Daniel R. Kelly, Jr., are ENJOINED from further serving as trustees of The Finest Incorporated Profit Sharing Plan;

6. Defendants, Gerald W. Bryans and Daniel R. Kelly, Jr., are ENJOINED for a period of five (5) years from serving as fiduciaries of any employee benefit plan covered by ERISA; and

7. Defendants, Gerald W. Bryans and Daniel R. Kelly, Jr., are ENJOINED to cooperate with their to be court-appointed successor by turning over all Plan documents and records in their possession or control and by assisting their successor in the location and determination of all possible participants and beneficiaries of The Finest Incorporated Profit Sharing Plan.