Eugene DONOVAN, et al., Plaintiffs,

v.

UMIC, INC., etc., Defendant.

No. 82 Civ. 0381 (KTD).

United States District Court,
S.D. New York.

Feb. 28, 1984.

Robert D. Gould, P.C., New York City, for plaintiff.

Adler, Hindy, Turner & Glasser, New York City, for defendant; Lawrence B. Carlson, New York City, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendant UMIC, Inc. ("UMIC") moves for summary judgment. In the alternative, UMIC moves for dismissal of the complaint for failure to state a claim upon which relief can be granted or for transfer of this action to the Western District of Tennessee. For the reasons that follow, UMIC's motion for summary judgment is granted.

Plaintiffs, ten individuals who worked in UMIC's New York City branch office before it closed, brought this action to recover benefits that they allege are due under UMIC's Employee's Profit-Sharing Trust (the "Plan"). UMIC, a Tennessee corporation involved in municipal bond financings, was also Administrator of the Plan. Plaintiffs additionally claim that the defendant mismanaged the Trust's assets and violated various record-keeping provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et. seq. I turn first to plaintiffs' claim for benefits due under the plan.

### I.

Under the Plan's vesting provisions, an employee's benefits become vested only after the employee has accrued five years of service. Admittedly, none of the plaintiffs completed five years of service. All ten plaintiffs worked in UMIC's New York branch office approximately from 1975 until its closing in 1978. Although UMIC briefly reopened the branch, the addition of a few months to plaintiffs' years of service still leaves each short of the requisite five years of service.

Plaintiffs, however, assert that the closing of the New York office caused a "partial termination" of the Plan. This partial termination, according to plaintiffs, resulted in an immediate vesting of benefits. In support, plaintiffs cite Internal Revenue Code section 411(d)(3) which provides that upon the "termination or partial termination [of a qualified plan] the rights of all affected employees to benefits accrued to the date of such termination, partial termination, or discontinuance ... are nonforfeitable." This section provides, however, that even if the closing of defendant's New York branch constitutes a partial termination, plaintiffs would be entitled only to those benefits that had "accrued" by the date of the branch's closing. UMIC's pension plan, on the other hand, in Article VIII, section 8.01, provides that no benefits accrue before the completion of the requisite five years of service. *See* Defendant's Motion for Summary Judgment, Exh. A at 13. ERISA expressly permits the non-accrual of benefits for up to five years in 29 U.S.C. § 1053(a)(2)(B). Therefore, in the absence of any accrued benefits by the plaintiffs at the time of the alleged partial plan termination, plaintiffs have not established that they have suffered any actionable injury or could be entitled to any benefits.

■ Plaintiffs apparently argue that their discharge was somehow improper because it resulted in the forfeiture of the accumulation of three plus years of service. Plaintiffs do not contest, however, that they were employees terminable at will. Either party could have terminated the employment relationship for any reason or for no reason at all. *See James v. Board of Education*, 37 N.Y.2d 891, 340 N.E.2d 735, 378 N.Y.S.2d 371 (1975). The termination of plaintiffs was not actionable under New

York state law, *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983), nor have plaintiffs cited violations of any federal proscriptions against such discharge. *See Moore v. Home Insurance Co.*, 601 F.2d 1072, 1075 (9th Cir.1979) ("The company had the right to discharge Moore, so it did not wrongfully prevent him from fulfilling conditions precedent to his eligibility for pension benefits.").

■ Plaintiffs have not alleged that the discharges were solely to prevent the vesting of benefits. Furthermore, plaintiffs have not cited any evidence or law to support such a theory. The fact that defendant closed its entire New York office and that many of the plaintiffs had only completed three years of service suggests that such a proposition is, in any case, factually untenable.

## II.

Plaintiff's complaint also alleges violations of certain administrative or record-keeping provisions of ERISA such as section 1024. In opposition to the defendant's motion, however, plaintiffs do not even mention these allegations. Their abandonment of these allegations probably stems from their inability to explain how they could conceivably have been injured by the supposed violations. In addition, defendant's motion papers contains at least some of these documents that allegedly were not provided to plaintiffs.

■ Finally, plaintiffs' arguments concerning alleged mismanagement of Plan assets is misdirected. As UMIC points out, Articles II and XIII of the Plan expressly and clearly designate the Trustees as the sole manager's of the pension trust assets. The Trustees, however, were not named as a defendant in this suit. I presume that the patent inapplicability of these last claims to UMIC explains why, again, plaintiffs did not even mention these allegations in opposition to defendant's motion for summary judgment. Plaintiffs' failure to proffer a real basis for such claims, highlights their lack of merit.

Accordingly, defendant's motion for summary judgment is granted and the complaint is dismissed.

SO ORDERED.