Robert ARAKELIAN, et al., Plaintiffs,

v.

NATIONAL WESTERN LIFE
INSURANCE CO.,
Defendants.

Civ. A. No. 84–1953 SSH.

United States District Court,
District of Columbia.

Oct. 4, 1990.

Laurence Edward Gold, Washington, D.C., for plaintiffs.

Richard G. Vernon, Miles & Stockbridge, Washington, D.C., James R. Eyler, George Beall, Miles & Stockbridge, Baltimore, Md., Will D. Davis, Heath, Davis & McCalla, Austin, Tex., for National Western, Builders, Contractors.

John T. Coyne, David Patrick Durbin, Washington, D.C., for Richard Andrews, Richard Boswell, Builders, Contractors, John R. Howard.

Jeffrey J. Hines, Alvin Ira Frederick, Charles Martinez, Baltimore, Md., for Benefits, Inc.

Tarrant Hale Lomax, Washington, D.C., for Halco Engineering, Welcon, Inc.

Gerald I. Katz, Vienna, Va., for United Masonry, Inc.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendant United Masonry, Inc., of Virginia's (United Masonry) motion for summary judgment. Upon consideration of that motion, plaintiffs' opposition, United Masonry's reply, and the entire record herein, the Court grants the motion in part and denies it in part.

### Background

The background of this longstanding case has been addressed in the Court's prior opinions. *See Arakelian v. National Western Life Insurance Co.*, 724 F.Supp. 1033 (D.D.C.1989); *Arakelian v. National Western Life Insurance Co.*, 126 F.R.D. 1 (D.D.C.1989); *Arakelian v. National Western Life Insurance Co.*, 680 F.Supp. 400 (D.D.C.1987). However, little has been said to date about defendant United Masonry. United Masonry employed five of the

named plaintiffs.[1] United Masonry enrolled them in its newly-adopted pension plan, which had been developed by National Western Life Insurance Company (National Western), and deducted from their pay amounts otherwise required to be paid to them in wages under the Davis–Bacon Act. Those deductions were sent to National Western on behalf of the individuals working for United Masonry. United Masonry adopted the National Western Life Insurance Company's Builders, Contractors, and Employees Retirement Trust and Pension Plan (Plan) on April 15, 1983, after receiving information about the Plan from Jacob Weiss.[2] *See* United Masonry's Motion for Summary Judgment, Exhibit 7. The Plan was characterized as a way to lower costs while helping employees. In the information provided to United Masonry were examples which showed how an employer could pay $7.50 towards the plan; pay the employee $9.00, and save $2.34 per Davis–Bacon employee, per hour.[3] United Masonry paid exorbitant amounts into National Western's Plan, using the suggested calculation which subtracted the going wage from the Davis–Bacon required wage. This "leveling out" formula allowed United Masonry to equalize take home pay for its employees on Davis–Bacon and non-prevailing wage jobs. United Masonry paid into the Plan from June 1983 until March 18, 1984. During that time United Masonry claims that it believed it was acting in compliance with the Plan and the applicable laws. This is in spite of a meeting called by Maria Ortiz, an official of the United States Housing and Urban Development Agency (HUD), in August 1983 to discuss complaints received by HUD about United Masonry's contributions and HUD's concerns about the contributions.[4] On August 20, 1984, United Masonry received a letter from Ortiz which stated that HUD had investigated the pension plan payments made by United Masonry between the dates of June 4, 1983, and January 14, 1984. Those investigations revealed that United Masonry was contributing over 50% of the employees' weekly gross earnings to the Plan. Again United Masonry contacted National Western. At first National Western claimed that its leveling-out plan was completely legitimate; however, on October 10, 1984, National Western sent United Masonry a letter saying that the Department of Labor (DoL) had changed its interpretation of the level of acceptable contributions and now employers were not to contribute in excess of 25% of the employees' hourly basic cash wage.[5] On October 24, 1984, HUD informed United Masonry that it had to refund the excess contributions and set forth the exact manner in which the refunding process was to be accomplished.[6] On February 12, 1985, United Masonry submitted its calculations as to the excess contributions to HUD. On April 24, 1985, HUD verified and approved the calculations and gave United Masonry the exact procedures for restitution. On May 17, 1985, United Masonry sent the appropriate checks to all employees except those who already had requested their funds

1. Robert Arakelian, Roy Butler, Elmer Diggs, Ryland Stewart, and Christopher Wills.

2. At the time United Masonry received the information, Weiss worked for Corroon & Black Benefits. Weiss later formed Benefits, Inc., which almost exclusively sold National Western's Plan. Benefits, Inc., is also a defendant in this case.

3. This savings, the material claimed, is incurred because by paying a lower base pay, an employer would pay lower FICA taxes, worker's compensation, unemployment, and public liability per employee per hour, than it would with a higher base pay. The information implied that the employer in paying the lower base pay, with the remaining balance going to fringe benefits, would be acting in compliance with the law.

4. United Masonry immediately contacted National Western, which took the position that the excess contribution rate was legal. *See* affidavit of Douglas Hottle, United Masonry's Motion for Summary Judgment.

5. *See* affidavit of Douglas Hottle, United Masonry's Motion for Summary Judgment.

    It appears that DoL always took the position that employers were not to contribute in excess of 25% of the employee's hourly wage, and this was communicated to National Western long before National Western sent the October letter about DoL's supposed change of heart.

6. That information was received by United Masonry on October 30, 1984.

from National Western.[7] United Masonry also paid the applicable taxes on the excesses. No taxes were paid on the excesses already repaid, via National Western, to the employees. *See* United Masonry's Motion for Summary Judgment, Exhibit 27.

### Discussion

Plaintiffs argue that United Masonry is liable on several grounds. First, plaintiffs argue that United Masonry knowingly aided and abetted National Western and its trustees in a number of fiduciary breaches, and, as a result, financially benefitted. Second, plaintiffs argue that United Masonry is an ERISA fiduciary since it "exercised discretionary and other authority ... for certain purposes, and breached various fiduciary duties." *See* Plaintiffs' opposition at 5. Specifically, plaintiffs claim that United Masonry breached its fiduciary duties under ERISA by (1) adopting the Plan; (2) failing to monitor the performance of National Western and the Trustees in administering the Plan; (3) remaining in the Plan when it plainly violated ERISA; (4) setting contribution levels above the 25% limitation; (5) failing to pay taxes on the refunded money and failing to pay interest on the payments; and (6) making late contribution payments to the Plan.

Defendant United Masonry argues, among other things, that it did not aid and abet in any fiduciary breaches, that it is not a fiduciary under the terms of ERISA, and that plaintiffs cannot allege such claims as they were not alleged in the complaint.

### Aiding and Abetting

While there is no statutory cause of action under ERISA against non-fiduciaries for aiding and abetting a fiduciary in ERISA breaches, non-fiduciaries have been found liable for ERISA violations. *See Whitfield v. Lindemann*, 853 F.2d 1298 (5th Cir.1988), *cert. denied, Klepak v. Dole,* — U.S. ——, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989); *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir.1988); *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1220–21 (2d Cir.1987); *Fink v. National Savings & Trust Co.*, 772 F.2d 951, 958 (D.C.Cir.1985); *Thornton v. Evans*, 692 F.2d 1064 (7th Cir.1982); *Pension Fund– Mid Jersey Trucking Industry–Local 701 v. Omni Funding Group*, 731 F.Supp. 161 (D.N.J.1990); *Foltz v. U.S. News & World Report, Inc.*, 627 F.Supp. 1143, 1168 (D.D.C.1986); *Donovan v. UMIC, Inc.*, 580 F.Supp. 1455 (S.D.N.Y.1984); *Donovan v. Bryans*, 566 F.Supp. 1258 (E.D.Pa.1983); *Donovan v. Daugherty*, 550 F.Supp. 390 (S.D.Ala.1982); *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629 (W.D.Wis.1979). In order to find a non-fiduciary liable for aiding and abetting, it must be shown that it gave knowing and substantial aid in the breach. Some circuits also have required a showing that the non-fiduciary derived direct financial benefit from the harm. *See, e.g., Thornton v. Evans*, 692 F.2d 1064; *Fremont McGraw–Edison Co.*, 606 F.2d 752, 759 (7th Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980); *Donovan v. Daugherty*, 550 F.Supp. at 410, 411.

Plaintiffs argue that regardless of the complexity of the ERISA laws, United Masonry should have known that its payments were in excess of the acceptable payments. Plaintiffs contend that United Masonry knew or should have known that it was acting in violation of ERISA by contributing in excess of 25% of its employees' wages to the Plan.

It is clear to the Court that National Western led United Masonry to believe that its actions were lawful. First, National Western, in conjunction with Benefits, Inc., told plaintiffs that the leveling calculations were lawful.[8] The only notation of a 25%

---

**7.** On November 4, 1983, United Masonry wrote National Western about five employees who had requested refunds. Arakelian, Diggs, and Wills were three of the five. All three asked to terminate their pensions and to receive their assets at about that time. National Western made them wait six months, and then returned their contributions, minus surrender costs in the spring of 1984. United Masonry did not pay them the excess amounts since it assumed that they had already received the amounts from National Western.

**8.** The evidence indicates that even after United Masonry contacted National Western about the

limit is noted in one line in the Plan which states that contributions are not to exceed 25% of a participant's annual wages. National Western minimized this point. For example, National Western provided United Masonry with a DoL letter which stated in part:

> Although it is true that there is no maximum amount which can be credited for "bona fide" fringe benefits, the amount must represent the actual costs or contribution rate required to provide benefits for the employee in question.

*See* United Masonry's Motion, Exhibit 8, at 87.

Second, National Western gave the leveling formula to United Masonry. National Western's benefit "administration kit" and sales material, as discussed above, set forth examples in which more than 25% of the employee's wage was contributed to the Plan. Furthermore, in the "administration kit" given to United Masonry, via Benefits, Inc., National Western stated that an employer could determine how much to pay into the Plan and that the employee did not have to approve the Plan. *See* United Masonry's Exhibit 8 at 1.

Third, National Western provided United Masonry with IRS and DoL letters that appeared to approve of the National Western Plan. The "administration kit" also included DoL and IRS determination letters which appear to state that the Plan was acceptable. This was patently misleading.

In fact, as the IRS notified National Western on August 1, 1985, "the 1982 amended Plan never received an opinion letter." In spite of this, the IRS noted that "... National Western has been marketing the 1982 amended Plan under the 1978 or 1979 opinion letter covering the master Trust." [9] *See* Plaintiffs' Opposition, Ex. 4. The IRS expressed its concern that the conditions for approval of the plan were not followed or communicated to employers adopting the Plan. *Id.* The IRS specifically stated that adopting employers were not instructed to obtain IRS determination letters, and were informed that they were adopting an IRS-approved plan.

It is clear that National Western misled United Masonry as to the proper percentage and never questioned United Masonry's contributions in spite of National Western's responsibility to do so.

However, it is also clear that United Masonry did not provide breakdowns of hours and wages which would be necessary to determine the percentage of pay in cash versus fringe benefits. Plaintiffs argue that United Masonry's failure to do so aided National Western in its fiduciary breaches.[10] The Plan documents stated that National Western would monitor the contributions and the Plan Administrator (National Western) would adjust the amount of the annual additions so that they did not exceed the permitted maximum.[11] *See* United Masonry's Motion for Summary Judgment, Exhibit 1, National Western's

HUD concerns, National Western said that the deductions were lawful. National Western later sent United Masonry a note that indicated that DoL had changed its point of view. *See* Affidavit of Douglas Hottle of United Masonry, who claims that he spoke to Larry West and National Western's legal counsel, David Cauldwell, who assured him that the leveling procedure was legal.

9. The IRS had requested that National Western make certain changes to the amended Plan before it would issue a favorable opinion letter. However, National Western did not submit those changes and was not issued a favorable opinion letter with respect to the amended plan as of August 1, 1985.

10. National Western clearly bore the responsibility of making sure that any excess payments were returned to participants. National Western apparently ignored that responsibility. The

DoL discussed this in its letter to National Western, which stated in part:

> Also, any excess contributions which result from the limitations on a contractor's contributions to a participant's account as provided for under Article 10, and for which the employer has taken credit toward meeting his Davis–Bacon prevailing wage obligation, must be either paid to participants in cash or allocated to the accounts of the employee in whose behalf the contributions were made.

*See* United Masonry's Ex. 8, Letter from DoL.

11. *See also Central States v. Central Transport, Inc.,* 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) (stating that trustees have a fiduciary duty to monitor employers' payments and assure that there is adequate funding of an ERISA plan.)

Pension Plan § 8.1. Although plaintiffs have not given the Court any evidence that National Western notified United Masonry that it was not complying with the correct accounting practices, United Masonry continued to make excess payments even after HUD notified United Masonry of its concern in August 1983.[12]

In light of the circumstances, the Court finds that there is a genuine issue of material dispute which prohibits the granting of summary judgment on the issue whether United Masonry knowingly aided and abetted National Western in fiduciary breaches by continuing to pay in excess of 25% of its employees' wages into the Plan after United Masonry was contacted by HUD.

### Other Alleged Fiduciary Breaches

Plaintiffs also argue that in certain circumstances, United Masonry owed the Plan and its participating employees a fiduciary duty. Plaintiffs assert that United Masonry violated that duty by adopting the Plan, failing to monitor the performance of the Plan, remaining in the Plan when it plainly violated ERISA, making payments in excess of 25% of employees' hourly wages, making late contribution payments, and failing to pay the correct taxes on excess contributions.

Section 1002(21)(A) of Title 29 of the United States Code defines a "fiduciary" as a person who (i) "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," (ii) "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so," or (iii) "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C.A. § 1002(21)(A) (1990). *Brock v.*

*Self,* 632 F.Supp. 1509, 1519–20 (W.D.La. 1986). ERISA "recognizes that a person may be a fiduciary for some purposes and not others." *Leigh v. Engle,* 727 F.2d 113, 133 (7th Cir.1984), *on remand,* 619 F.Supp. 154 (N.D.Ill.1985), *aff'd,* 858 F.2d 361 (7th Cir.1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989). United Masonry clearly had no control over the Plan. It did not elect trustees, have any power of removal, have the power to influence or make investment decisions, or any discretionary power over the Plan.

Because United Masonry had no control over the administration of the Plan, it cannot be held liable, as a fiduciary, for failing to monitor the performance of the Plan. In addition, since it did not know of the improprieties built into the Plan, and in fact was misled as to its legitimacy, it cannot be held liable for adopting the Plan. *See Donovan v. UMIC, Inc.,* 580 F.Supp. at 1457 (S.D.N.Y.1984). A company's decision to participate in a pension plan is a business decision. *See Van Orman v. American Insurance Co.,* 608 F.Supp. 13 (D.N.J. 1984). ERISA does not contemplate that every company participating in a plan is an insurer of the entire plan. *Cf. Pension Fund–Mid Jersey Trucking Industry–Local 701 v. Omni Funding Group,* 731 F.Supp. 161, 176 (D.N.J.1990). Furthermore, case law makes it clear that when an employer establishes, amends, or terminates a benefits plan, as opposed to managing any assets of the plan and administering the plan in accord with its terms, its actions are not to be judged by fiduciary standards. *Musto v. American General Corp.,* 861 F.2d 897, 911–12 (6th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

Plaintiffs also argue that United Masonry breached its fiduciary duties by remaining in the Plan. However, it is evident that once the problems with the Plan

---

12. On the other hand, United Masonry acted commendably when contacted by HUD in August of 1984. When United Masonry was notified of its improper payments, it made complete payment to all of its employee participants who still belonged to the Plan. The Court notes, however, that United Masonry did not pay taxes on the five individuals who had previously withdrawn from National Western, and the Court reserves judgment as to United Masonry's potential liability for those taxes. The Court does not hold United Masonry accountable for the surrender charges imposed by National Western on those accounts.

were made evident, United Masonry stopped contributing to the Plan. Thus, again, plaintiffs' arguments fail, and defendant's motion for summary judgment must be granted on this point.

■ Plaintiffs contend that not only might United Masonry be held liable for aiding and abetting National Western by paying more than 25% of employees' hourly wages into the plan, it also might be liable as a fiduciary. The Court, partially for the reasons discussed earlier, denies United Masonry's motion for summary judgment as to this issue, without prejudice to the right to raise it at a later date.

■ Plaintiffs contend that by failing to pay interest on the excess payments, United Masonry breached its fiduciary duty, and should be forced "to disgorge all profits and other consideration received." *See* Plaintiffs' opposition at 32. The Court finds that United Masonry did not have a fiduciary duty to pay interest on the returned payments.[13] Thus, the Court concludes that plaintiffs have failed to substantiate this claim, and grants United Masonry's motion on this issue. The Court also finds that United Masonry paid taxes on all of money refunded to the employees, with the exception of the employees who already had received refunds from National Western. Obviously, plaintiffs' argument fails as to the refunds made by United Masonry. However, the Court finds a genuine issue of material fact present as to whether United Masonry did or should have paid taxes on the refunds paid directly by National Western.

■ Remaining is United Masonry's motion for summary judgment on plaintiffs' claim that United Masonry breached its fiduciary duty by making late payments on at least two occasions. United Masonry admits that it did make payments slightly late on two occasions, but claims that plaintiffs cannot pursue this claim since it wasn't spelled out in the complaint. The Court finds that the complaint is broad enough to include this claim and United Masonry was aware that such accusations of fiduciary breaches existed outside of this action. The Court finds that United Masonry has not sufficiently established a lack of genuine issue of material fact which would justify granting summary judgment on this claim.

### Conclusion

Defendant United Masonry's motion for summary judgment is denied in part and granted in part. Defendant's motion is denied as to the aiding and abetting claim. Defendant's motion is granted as to the following alleged fiduciary breaches: (1) adopting the Plan; (2) failing to monitor the performance of the Plan; (3) electing to remain in the Plan; (4) stopping contributions to the Plan; and (5) failing to pay interest on returned excess contributions. The Court denies summary judgment on plaintiffs' claim that United Masonry should have paid taxes on the refunds paid directly by National Western, and denies summary judgment on plaintiffs' claim that United Masonry breached fiduciary duties by paying in excess of 25% of employees' hourly wages to the Plan and making late payments.

---

13. Since United Masonry never had the money so as to collect interest, the Court finds it difficult to conclude that United Masonry was unjustly enriched and to order United Masonry to disgorge such supposed profits.